MARSHALL STUMP v. STATE OF NEBRASKA.

271 N. W. 163

FILED JANUARY 22, 1937. No. 29952.

*Perry, Van Pelt & Marti, J. F. Fults* and *J. P. O'Gara,* for plaintiff in error.

*William H. Wright, Attorney General,* and *Edwin Vail, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and RAPER, District Judge.

GOSS, C. J.

On an information charging murder in the second degree, defendant was convicted of manslaughter. He was sentenced to three years in the penitentiary and appeals.

The information charged that defendant pushed, forced and threw Gwendolyn Chapman from a moving motor vehicle, thus causing her death.

On the evening of September 16, 1935, Darryl Slonecker of Holbrook, Marshall Stump of Edison, and Gwendolyn Chapman of Beaver City, met at Holbrook. They spent most of the night driving from place to place among the towns in northern Furnas county, obtaining and drinking beer and pop which they "spiked." This term is defined in the evidence as meaning that the lighter drink is mixed with alcohol to give it a "kick." They were transported in Slonecker's truck all the time driven by him. They sat on a board or box-seat built over the tank in the front of the car. It was equipped with a narrow seat taken from a motor-coach and placed back of the steering wheel. The driver used this seat. Gwendolyn Chapman sat in the middle and Stump sat on the right side of the board seat. At the time Gwendolyn Chapman met her death they had started from Edison back to Holbrook. The tragedy occurred about four in the morning of September 17, 1935, and about a mile west of Edison. Defendant and Gwendolyn Chapman were quarreling, as they had been several times during the night. He wanted to take her back to Beaver City, where she lived, and she wanted to go to Edison, where he lived, to be with or near him. Slonecker testified that Stump told her he was going to take her back to Beaver City, she said she was not going, he slapped her, she hit him, then he grabbed her by the neck, slapped her two or three times, jerked her over his lap and she was "thrown off." Just after giving that testimony the witness said, in answer to a question as to what happened when defendant drew her across his lap, "Well, she fell off—was thrown off, the truck hit that mail box and that sign and went into the ditch."

Arising out of the testimony above recited, defendant argues that the evidence does not show that he threw Gwendolyn Chapman off the truck but that her fall was due to the truck hitting the mail box and, some distance

farther on, striking the road marker, causing her to be thrown off when the car went into the ditch. Slonecker's evidence indicates that she was thrown off before the car hit the mail box and that that was due to his looking around (as he testified he did) just before she was thrown off, thus causing the truck to swerve to the right. The testimony recited was sufficient basis of fact for the jury to decide that she was thrown off by defendant rather than because of the impact of the truck upon the mail box and road marker.

Defendant in his testimony denied any quarrel or controversy between him and Gwendolyn Chapman or that he took hold of her or attempted to throw her out of the truck and said that he did not see the mail box but felt a jar just before they were thrown out.

These two are the only living witnesses. Gwendolyn Chapman was taken at once to a doctor who said her neck was broken and that she was dead.

It is true that Slonecker admitted on cross-examination that before his own trial he told a lawyer, and on his trial he swore, that both Stump and Gwendolyn Chapman fell off the truck just as the truck passed the mail box. But whatever inconsistency there was in that testimony, and the effect of his whole testimony here, was a matter for the jury to decide.

Defendant assigns and argues error because the trial court refused to admit in evidence a journal entry in the case where Slonecker was charged, convicted and sentenced in Furnas county for causing the death of Gwendolyn Chapman on September 17, 1935, while operating a motor vehicle and under the influence of intoxicating liquor. Even if on the merits this ruling was erroneous, which we do not decide, it was not prejudicial because the record shows that, as a witness for the state, Slonecker had previously testified on this trial that he had been convicted for the offense and was then serving his term in the penitentiary. "A judgment will not be reversed for error in sustaining an objection to the evidence of a witness upon a point which

is otherwise well established by the testimony." *Macrill v. City of Hartington,* 93 Neb. 670, 141 N. W. 825. See *Hutchinson v. State,* 19 Neb. 262, 27 N. W. 113; 4 C. J. 1010.

The only other error assigned is as to the court's instruction No. 12, defining excusable homicide. The brief says: "The defendant in this case did not admit a homicide and did not plead or introduce any evidence of an excusable homicide. * * * The instruction was erroneous as it was not based upon or applicable to the evidence adduced." A sufficient answer to that argument is that defendant invited the instruction by his requested instruction No. 11, which said in part: "There are homicides which in the eyes of the law are justified. Among these are accidental killing; killing by misadventure; and killing in self-defense."

By instruction No. 12, the court not only properly defined justifiable homicide, as invited by defendant, and said that it was not incumbent upon defendant to prove that the acts which resulted in her death were excusable, but, if the evidence thereon raised in the minds of the jurors a reasonable doubt as to defendant's guilt, the jury should acquit him. The instruction was invited, it was fully as favorable to defendant as required by law, if not more favorable, and was in no way prejudicial to his rights. "A defendant in a criminal action may not predicate error on an instruction that is more favorable to him than is required by the law applicable to the charge made." *Crawford v. State,* 116 Neb. 629, 218 N. W. 421.

Defendant argues that a person can be killed only once, and that, if Gwendolyn Chapman came to her death by Slonecker's unlawful operation of the truck while intoxicated, she was not killed by being pushed or thrown from the truck by Stump. Defendant cites *Sherman v. State,* 113 Neb. 173, 202 N. W. 413, to the effect that, where two defendants were separately tried for a felony and the first was convicted but the second was acquitted, it was error to sentence the defendant first tried. That case is easily distinguishable. The charge there was a conspiracy to commit a felony. It takes two or more persons to form a con-

spiracy. No conspiracy was alleged here. The two parties were accused of different statutory crimes. We are charged with the duty of reviewing the trial before the court and jury of Stump only. This court is bound by the record made in the case before it.

We find no prejudicial error in the record. The judgment is

AFFIRMED.

CARTER, J., dissenting.

The defendant was convicted of manslaughter under an information charging that he did "feloniously and purposely push, force and throw" one Gwendolyn Chapman from a moving motor vehicle and thereby cause her death. Darryl Slonecker, the state's chief witness, was the driver of the truck and was, at the time of the trial, serving a three-year penitentiary sentence for operating it while under the influence of intoxicating liquors and by reason thereof unlawfully causing the death of Gwendolyn Chapman. It is quite apparent that both convictions cannot be right.

In my judgment, the evidence in the case at bar is insufficient to sustain the conviction. At approximately the same time that the deceased was thrown from the truck, the truck was driven into a mail box, a stop sign and into the ditch. There is not a single word of evidence in the record, nor is there any such pointed out in the majority opinion of this court, that the defendant pushed, forced or threw Gwendolyn Chapman from the truck. All the inferences that might logically be drawn from the evidence are more consistent with the theory that drunken and negligent driving were the cause of Gwendolyn Chapman's death rather than any unlawful act of the defendant.

The only eyewitness who testified for the state was Darryl Slonecker. He had previously been convicted of causing the death by driving the truck while under the influence of intoxicating liquors. He admits that he has previously told different stories as to what happened, one of which coincides with the story told by the defendant. The record clearly demonstrates that his evidence is unreliable

and his credibility impeached to such an extent that they are entitled to little weight in determining the sufficiency of the evidence.

The record discloses that Slonecker, the defendant and the deceased were, on the night in question, jointly engaged in an enterprise that was far from commendable. The jury were undoubtedly influenced unduly by their reprehensible conduct. It is the duty of this court to prevent a conviction to stand that is based on passion and prejudice. It appears to me that defendant ought not be required, in the absence of statutory authority, to spend three years in the penitentiary for participating in a drunken party for which all were equally responsible. The state failed to prove the defendant guilty of the crime charged beyond a reasonable doubt as a matter of law. The trial court should have directed a verdict for the defendant.

DAY, J., concurs in the above dissent.