STATE OF NEBRASKA, APPELLEE, V. CHARLES J.
HAMILTON, APPELLANT.

351 N.W.2d 63

Filed June 22, 1984. No. 83-795.

Paul Korslund of Everson, Noble, Wullschleger,
Sutter, Sharp, Korslund & Willet, for appellant.

Paul L. Douglas, Attorney General, and Bernard
L. Packett, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS,
SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The defendant, Charles J. Hamilton, was convict-
ed of first offense driving while under the influence
of alcoholic liquor and sentenced to probation for a
period of 9 months. The county court also fined
Hamilton $100 and suspended his driver's license for
a period of 60 days. Upon appeal to the district
court the judgment was affirmed.

The assignments of error relate to jury instruc-

tions given and refused by the county court.

The record shows that at about 1 a.m. on February 17, 1983, Hamilton, while operating his pickup truck, crossed the centerline of the highway and collided with an oncoming semitrailer truck. Hamilton, suffering from facial lacerations and a concussion which he received in the accident, was taken to a hospital. While at the hospital, Hamilton was arrested by Gage County Deputy Sheriff Daniel Cripe, who had reason to believe that Hamilton was intoxicated. A breath test conducted at the sheriff's office shortly after the arrest disclosed that Hamilton's blood alcohol level was .213 percent.

Hamilton filed a motion to suppress the results of the breath test, alleging that the test had been obtained in violation of Neb. Rev. Stat. § 39-669.09 (Reissue 1978). After an evidentiary hearing the motion to suppress was overruled. No error is assigned and no issue was raised in the district court as to the ruling on the motion to suppress. The result of the breath test was admitted without objection at the trial in the county court.

Section 39-669.09 provides:

The law enforcement officer who requires a chemical blood, breath, or urine test pursuant to section 39-669.08 may direct whether the test shall be of blood, breath, or urine; *Provided,* that when the officer directs that the test shall be of a person's blood or urine, such person may choose whether the test shall be of his blood or urine. The person tested shall be permitted to have a physician of his choice evaluate his condition and perform or have performed whatever laboratory tests he deems appropriate in addition to and following the test administered at the direction of the law enforcement officer. *If the officer shall refuse to permit such additional test to be taken, then the original test shall not be competent as evidence.* Upon the request of the person tested, the results of the test taken at the

direction of the law enforcement officer shall be made available to him.
(Emphasis supplied.)

Hamilton contends that his request to have an additional blood test performed was refused by the deputy sheriff. At the hearing on the motion to suppress, the deputy sheriff testified that Hamilton asked him at the time of the arrest at the hospital, "I can't just take a blood test here and get it over with?" The deputy sheriff replied, "No, you'll have to come to the sheriff's office for a breath test." The deputy sheriff testified that defendant made no other request for an additional test.

Hamilton's daughter testified regarding the request made by Hamilton as follows:

Well, my dad asked him, Charles asked him — told him he had to go down and get a breath test and my dad said well, you know, he said he thought he'd rather go — just have a blood test while he was there at the hospital, and stuff. And then the officer said, you know, he didn't have a choice. He'd have to come down there.

The defendant testified as follows:

Q. [By Mr. Korslund] Okay. Mr. Hamilton, I'm going to ask you about this conversation that we're all talking about. Do you recall Deputy Cripe, that night at the hospital on the 17th of February of this year, asking you or talking to you about taking a test?

A. Yes, sir.

Q. What's your best recollection of what he said?

A. Well, he said I had to go down to the sheriff's office and take a breath test.

Q. Okay.

A. And I said, "While I'm here at the hospital," I said, "I'd rather take a blood test."

Q. Okay. What did he say?

A. He said, "You don't have a choice."

Q. Okay.

A.  He said, "You'll have to come down to the sheriff's office with us."

Q.  Okay.  And that's pretty much what Deputy Cripe said, as you understand?

A.  Yeah.  And then - - -

Q.  And was — Do you recall some further conversation beyond that?

A.  Well, yeah, Then I asked him — I said, "Well, are we going to have to come back up here," — I said, "Then we'll have to come back up here after the breath test for the blood test," and he said, "No, that won't be necessary."

. . . .

A.  Well, after the test I said, "Now" — I said, "Now do we go back up to the hospital?" He said, "No." . . .

Defendant was released to his family on bond shortly after the breath test.  Defendant further testified:

Q.  Okay.  Is there any reason after that that you, yourself, didn't go back up to the hospital on your own?

A.  Well, I felt it wouldn't do any good because of the way it was kind of explained to me, that it was - - -

Q.  You had asked about it twice before already?

A.  Yeah.  There wasn't any need of it.  I wouldn't even think it would be legal without an officer being present for the test, anyway. I don't know.

Q.  Okay.  You figured it was all over at that point?

A.  Yeah.

In overruling the motion to suppress, the county court stated that "although [the defendant] would have preferred to have a blood test over a breath test, [he] did not request a second test. . . . [H]e was advised of his right — excuse me, he was advised of his obligation to take a breath test and . . .

the state did nothing to keep him from getting a second test if he wanted to do it.''

Hamilton contends that it was error for the county court not to instruct the jury that if it found that the deputy sheriff had refused Hamilton's request for an additional test, then the results of the breath test conducted by the deputy sheriff should be disregarded. The court did instruct the jury that any refusal by the deputy sheriff of a request for an additional test was to be considered as bearing upon the weight and credibility to be accorded the breath test.

Neither the requested instruction nor the one given was correct. Whether a law enforcement officer refused a request for a second test is not a question for the jury, but it is a foundational requirement for the admission of evidence as to results of a breath test. The jury may not consider the question of an alleged refusal once the trial court has determined that all foundational requirements for admission of the results of the breath test have been met. In *State v. West, ante* p. 389, 401, 350 N.W.2d 512, 520 (1984), we held that requirements for the admissibility of the results of a urine test are foundational and are not a question for the jury. We said:

> Once the court, however, determines that the foundational requirements have been met and the evidence admitted, the jury has no function other than to determine the credibility and weight to be given the evidence. The jury is to consider the weight and credibility only of the test results, and not whether the foundational requirements necessary for admission of the tests were met. As a general rule, it is the province of the trial court in a jury case to determine the admissibility of the evidence offered by the parties at trial. See 75 Am. Jur. 2d *Trial* § 345 (1974). Neb. Rev. Stat. § 27-104(1) (Reissue 1979) specifically provides: ''Preliminary ques-

tions concerning the . . . admissibility of evidence shall be determined by the judge . . . ." The court, and not the jury, is the arbitrator as to the admissibility of the evidence. See, *Garcia v. State*, 159 Neb. 571, 68 N.W.2d 151 (1955); *Northern Nat. Gas Co. v. Beech Aircraft Corp.*, 202 Neb. 300, 275 N.W.2d 77 (1979); *State v. Suggett*, 200 Neb. 693, 264 N.W.2d 876 (1978). The jurors are the judges of the credibility of the witnesses and of the weight to be given their testimony, once it is determined by the court that the evidence is admissible. *State v. Meadows*, 203 Neb. 197, 277 N.W.2d 707 (1979).

In a criminal case the proper method to challenge the admissibility of evidence as to the results of a chemical test for intoxication is to file a motion to suppress. See, Neb. Rev. Stat. §§ 29-822 and 29-823 (Reissue 1979); *State v. Bevins*, 198 Neb. 761, 255 N.W.2d 284 (1977).

In the present case Hamilton filed a motion to suppress the results of the breath test. The court found that the deputy sheriff had not denied a request by Hamilton for a second test. The findings of fact by the trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983). The record supports the finding of the trial court on the motion to suppress.

The instruction given by the trial court, although erroneous, was harmless error. The situation is similar to that in *State v. West, supra* at 402, 350 N.W.2d at 521: "West received an instruction far more favorable than he was entitled to receive . . . ." In the present case the jury was instructed that it could consider any refusal of the deputy sheriff as bearing upon the weight and credibility to be given the breath test. In the present case the instruction was more favorable to Hamilton than a proper instruction. A defendant may not predicate error on an instruction that is more favorable to him

than is required by law. *Stump v. State*, 132 Neb. 49, 271 N.W. 163 (1937).

There being no error, the judgment is affirmed.

AFFIRMED.

CAPORALE, J., participating on briefs.