STATE OF NEBRASKA, APPELLEE, V. MARTIN J. DAKE,
APPELLANT.

529 N.W.2d 46

Filed March 10, 1995.   No. S-93-1101.

James M. Dake, of Grant, Rogers, Maul & Grant, and Kenneth J. Vampola for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and BOSLAUGH, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

Defendant-appellant, Martin J. Dake, was charged with violating then Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1992) by driving while under the influence of alcoholic liquor or while

having an excessive concentration of alcohol in his blood, breath, or urine. He was thereafter convicted by the county court of "driving while under the influence of alcohol." That adjudication was affirmed by the district court and the Nebraska Court of Appeals. *State v. Dake*, 94 NCA No. 35, case No. A-93-1101 (not designated for permanent publication). Dake thereafter successfully sought further review by this court. He asserts, in summary, that the Court of Appeals erred in affirming the district court's failure to rule that the county court erred by (1) failing to make specific findings of fact and conclusions of law, (2) failing to sustain Dake's motion to suppress certain evidence, (3) admitting certain evidence, and (4) finding the evidence sufficient to support the charge. We now affirm the judgment of the Court of Appeals.

## II. FACTS

On March 7, 1993, Fremont police officer Dwight P. Murphy was on routine patrol when, at about 1 a.m., he noticed the automobile ahead of him momentarily cross the marked yellow broken centerline. Murphy followed the automobile and stopped it at about 1:10 a.m.

In the course of events surrounding the stop, Murphy noticed that Dake's eyes were bloodshot and watery, that his speech was slurred, and that there was an odor of alcohol coming from the interior of the automobile. After Murphy confirmed that the odor was coming from Dake's person, he determined that Dake swayed when walking, slurred words when speaking, and had difficulty with finger dexterity. Dake admitted he had consumed two beers and an Amaretto and sour mixed drink.

As a result of all he had seen, heard, and smelled, Murphy, who had 14 years' experience as a police officer, concluded that Dake was under the influence of alcohol and had him take a preliminary breath test, which Dake failed. Murphy then placed Dake under arrest and took him to the police station for further testing.

At about 1:40 a.m., Murphy videotaped the events at the station. The tape shows Dake swaying and losing his balance momentarily and holding himself upright against a wall. An Intoxilyzer test of his breath, concluded at 1:48 a.m., read that

Dake's blood contained more than ten–hundredths of 1 gram by weight of alcohol per 100 milliliters of blood. See *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987) (explains determination of blood alcohol content through Intoxilyzer test of breath). Shortly thereafter, Murphy took Dake to the Dodge County Judicial Center for holding. Murphy left the center at about 2 a.m. At 3:15 a.m., Dake's mother and attorney arrived to post bond and obtain Dake's release from the center.

While Dennis Jacobson, a corrections officer, was going over the bond procedures with the mother, she asked if Dake had been taken for an independent blood test. After he finished the bonding procedure, Jacobson called the booking officer. Jacobson and the booking officer then asked Dake if he was requesting a blood test, and Dake responded affirmatively. Jacobson thereupon told the mother that he would contact Murphy and get back with her.

Murphy testified that he talked to Jacobson at approximately 3:30 a.m. and was then on duty at the hospital. Jacobson told Murphy that Dake wanted to be taken for a blood test. Murphy refused to return to the center to take Dake for a blood test, since it would be well after 4 a.m. before he could be there.

Although there was some delay in the bonding process, Dake left the center at 4:15 a.m. No blood test was ever taken.

Dake filed a motion to suppress the results of any evidence relating to his drinking, which was overruled. Both the videotape of the events at the police station and the results of the Intoxilyzer test were later admitted in evidence over Dake's objections.

## III. ANALYSIS

The relevant statute at the time, § 39–669.07, provided in part:

(1) It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle:

(a) While under the influence of alcoholic liquor or of any drug;

(b) When such person has a concentration of ten–hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood; or

(c) When such person has a concentration of ten–hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath.

### 1. FINDINGS OF FACT AND CONCLUSIONS OF LAW

With that statute before us, we move to a consideration of Dake's first assignment of error, the failure of the county court to make separate findings of fact and conclusions of law, as it was requested to do.

Whether the county court was required to do as requested in that connection is necessarily a question of law. In regard to such a question, an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Ruch v. Conrad, ante* p. 318, 526 N.W.2d 653 (1995). A violation of § 39–669.07(1) is a misdemeanor and is thus considered criminal in nature. See *State v. Karel*, 204 Neb. 573, 284 N.W.2d 12 (1979).

It is to be noted that the county court found generally that Dake was "guilty as charged under [§] 39–669.07 . . . driving while under the influence of alcohol." Thus, contrary to Dake's contention, the county court did make a specific finding as to which subdivision ·of § 39–669.07 Dake violated, i.e., subdivision (1)(a). More importantly, however, as we have held that Neb. Rev. Stat. § 25–1127 (Reissue 1989), requiring that upon request a court "state in writing the conclusions of fact found separately from the conclusions of law," does not apply to criminal cases, the trial court was not required to comply with Dake's request. See, *State v. Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992); *State v. Lozano*, 209 Neb. 772, 311 N.W.2d 529 (1981).

Thus, there is no merit to the first assignment of error.

### 2. NONSUPPRESSION OF EVIDENCE

Dake's second assignment of error claims the county court erred in failing to suppress the Intoxilyzer test result. This claim is premised on the portion of then Neb. Rev. Stat. § 39–669.09 (Cum. Supp. 1992) which read:

The person tested shall be permitted to have a physician of his or her choice evaluate his or her condition and perform or have performed whatever laboratory tests he or she

deems appropriate in addition to and following the test or tests administered at the direction of the law enforcement officer. If the officer refuses to permit such additional test to be taken, then the original test or tests shall not be competent as evidence.

The county court found that Dake's request for an independent blood test had not been denied.

While it is true that unless clearly wrong, the findings of fact made by a trial court on a motion to suppress will not be overturned on appeal, see *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994), this review of the county court's ruling turns not on its factual findings, but on its reading of the relevant statutory language. Consequently, we are dealing with a question of law.

With that in mind, we recall our analysis in *State v. Hamilton*, 217 Neb. 734, 351 N.W.2d 63 (1984). The motorist therein had been arrested for driving under the influence of alcohol. While at the hospital receiving treatment for injuries sustained in a motor vehicle accident, he was told that he would have to go to the sheriff's office for a breath test. The motorist thereupon asked, " 'I can't just take a blood test here and get it over with?' " The deputy responded, " 'No, you'll have to come to the sheriff's office for a breath test.' " *Id*. at 736, 351 N.W.2d at 65. The deputy stated that the motorist had made no further request, but the motorist testified that he then asked the sheriff if they would have to return for the blood test and the deputy had responded that would not be necessary. The motorist also stated that after the breath test at the sheriff's office, he asked, " ' "Now do we go back up to the hospital?" ' " and the deputy responded, " ' "No." ' " *Id*. at 737, 351 N.W.2d at 66. The motorist did not go to the hospital on his own for a blood test, explaining that he had already asked about it twice and that he did not think it would be legal without an officer's presence. We held that permitting a requested independent chemical test is foundational to the admission in evidence of the result of the State's breath test and, citing *State v. West*, 217 Neb. 389, 350 N.W.2d 512 (1984), reiterated that when the foundational requirements are met, the jury is only allowed to judge the weight and credibility of the test results. We then concluded that

the trial court had not clearly erred in finding that the sheriff had not denied the request for a second test, upheld the trial court's overruling of the motorist's motion to suppress the result of the State's breath test, and affirmed the motorist's conviction.

While authority can be found to the contrary, e.g., *State v. Karmen*, 150 Vt. 547, 554 A.2d 670 (1988), many states hold that while under statutes similar to § 39-669.09 the police cannot hamper a motorist's efforts to obtain independent testing, they are under no duty to assist in obtaining such testing beyond allowing telephone calls to secure the test. See, *Commonwealth v. Alano*, 388 Mass. 871, 448 N.E.2d 1122 (1983); Annot., 45 A.L.R.4th 11, § 23 (1986). This is generally true in constitutional due process cases where a right to a reasonable opportunity to collect exculpatory evidence of sobriety has been recognized. See, *Provo City v. Werner*, 810 P.2d 469 (Utah App. 1991); *Alano, supra*; *State v. Snipes*, 478 S.W.2d 299 (Mo. 1972), *cert. denied* 409 U.S. 979, 93 S. Ct. 332, 34 L. Ed. 2d 242; *In re Koehne*, 54 Cal. 2d 757, 356 P.2d 179, 8 Cal. Rptr. 435 (1960). See, also, *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (14th Amendment does not impose duty on police to preserve breath sample in order to introduce results at trial). In cases analyzing the statutory rights of various jurisdictions, see, *Provo City, supra* (police officer does not have statutory duty to assist in obtaining independent test); *State v. Hatlestad*, 347 N.W.2d 843, 845 (Minn. App. 1984) (under statute providing that failure to obtain independent test does not prevent admission of state's test unless additional test was " 'prevented or denied' " by peace officer, officer has no duty to furnish supplies or transportation, and test is neither prevented nor denied by refusal to assist); and *Alano, supra* (police may not hamper reasonable opportunity to secure test, but need not assist beyond allowing telephone calls to secure physician).

We agree with the latter group of states and hold that Murphy had no statutory duty to transport Dake anywhere in order that Dake might be independently tested.

Thus, there is no merit to the second assignment of error; the county court correctly overruled Dake's motion to suppress the

Intoxilyzer test result.

### 3. ADMISSION OF EVIDENCE

In the third assignment of error, Dake complains of the receipt into evidence of the Intoxilyzer test result and the police station videotape.

His argument with respect to the Intoxilyzer test is the same as he presented in connection with his motion to suppress. There is therefore nothing more to analyze in that regard, so we proceed to the matter of the videotape.

In that connection, Dake first argues that since the tape was made more than 30 minutes after he had last driven, it is not probative on the issue of whether he was impaired when he was driving. He urges that a number of factors come into play which constantly vary the amount of alcohol in one's bloodstream.

Although it appears we have heretofore not ruled on that precise question, we have held that a breath test given within a reasonable time after the motorist was stopped (in that case, less than 1 hour) was probative of a violation of § 39–669.07, the time lapse being a matter going to the weight of the test, rather than to its admissibility. *State v. Kubik*, 235 Neb. 612, 456 N.W.2d 487 (1990). The same reasoning applies to the matters depicted on the videotape. If an hour's delay is not unreasonable, it necessarily follows that a half–hour's delay cannot be unreasonable.

Consequently, the third assignment of error is also meritless.

### 4. SUFFICIENCY OF EVIDENCE

The failure of the preceding three assignments of error presage the doom of the fourth and last assignment of error, the assertion that the evidence is insufficient to support the charge.

A violation of § 39–669.07 is but one offense, which can be proved in different ways. *Kubik, supra*. Dake's driving, appearance, and impaired ability to walk, stand, and maneuver his fingers, coupled with Murphy's opinion, establish that he was driving while under the influence of alcoholic liquor, contrary to the provisions of § 39–669.07(1)(a), and the Intoxilyzer test result establishes that he was doing so while he had in his blood a greater concentration of alcohol than permitted by § 39–669.07(1)(b).

Thus, the State proved its charge; the fourth assignment of error is as meritless as were the preceding three.

### IV. JUDGMENT

Being correct, the judgment of the Court of Appeals is affirmed.

AFFIRMED.

WHITE, C.J., concurs.