STATE OF NEBRASKA, APPELLEE, V. LAWRENCE E. CONKLIN,
APPELLANT.

545 N.W.2d 101

Filed March 29, 1996.   No. S-95-339.

Phillip G. Wright, of Quinn & Wright, for appellant.

Herbert M. Fitle, Omaha City Attorney, Martin J. Conboy III, Omaha City Prosecutor, and J. Michael Tesar for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

Lawrence E. Conklin was charged with disorderly conduct in violation of Omaha Mun. Code, ch. 20, art. III, § 20-42 (1993) and carrying a concealed weapon in violation of Omaha Mun. Code, ch. 20, art. VII, § 20-192 (1993). Conklin filed a motion to quash, alleging that the municipal code sections under which he was charged are vague and overbroad unless restricted to acts committed in public. Conklin also filed a motion to suppress the evidence obtained from the apartment in which Conklin was arrested. The trial court denied both of Conklin's motions, and the district court affirmed. Conklin appeals. We affirm.

## I. FACTUAL BACKGROUND

On March 26, 1994, Officer Margaret Fowler was on duty and in uniform when she was dispatched to a disturbance at 2211 Howard Street, apartment No. 41, in Omaha, Nebraska. According to the testimony of Fowler, upon entering the building, she heard a loud thump "like someone pounding a hammer" emanating from one of the upstairs apartments. Accompanied by Officer David Rieck, she proceeded to the apartment from which the noise emanated.

As to what happened at this point, Fowler's and Conklin's testimonies differ. Fowler testified that finding the hollow core door slightly ajar, she knocked on the door two or three times; at which time, the door swung open so that she could see into the apartment. Conklin, who was visiting apartment No. 41, playing cards and drinking beer, claims that, in fact, the door was locked with three separate locks and that the officers forced the door open. Conklin testified that when the door opened, he was sitting on a bed in the apartment, admittedly holding a knife. However, Conklin insists that when the officers entered, he immediately dropped the knife at his feet while still sitting on the bed.

Fowler testified that when the door swung open, she saw the defendant standing four to five paces from the doorway in a fighting stance, holding a large butcher knife, and preparing to throw it toward the door. The officers drew their weapons and

told Conklin several times to drop the knife. When he dropped the knife, they instructed him to lie on his chest in a prone position. While Fowler secured the knife, Rieck handcuffed Conklin and searched him, finding another knife in his left rear pocket. Conklin testified that he lived next door to apartment No. 41, in apartment No. 43, and had visited apartment No. 41 on several previous occasions on social visits. Although he identified the person who lived in apartment No. 41 as Patricia, he did not know her last name.

Conklin moved to suppress all evidence seized by the officers as the product of an illegal search. Furthermore, after entering a plea of not guilty, the defendant moved to quash the information and charge on the grounds that §§ 20–42 and 20–192 of the Omaha Municipal Code are vague and overbroad.

The trial court denied both motions. Conklin appealed to the district court for Douglas County, which affirmed the county court's rulings and found that the evidence at trial was sufficient to convict Conklin of disorderly conduct and carrying a concealed weapon. Conklin appeals.

## II. ASSIGNMENTS OF ERROR

Conklin assigns as error the trial court's failure (1) to sustain his motion to suppress, (2) to find that the evidence presented at trial was insufficient as a matter of law to convict him of disorderly conduct or carrying a concealed weapon, and (3) to find that §§ 20–42 and 20–192 are vague, overbroad, and uncertain and are unconstitutional violations of due process of law.

## III. STANDARD OF REVIEW

Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Dake*, 247 Neb. 579, 529 N.W.2d 46 (1995); *State v. Skalberg*, 247 Neb. 150, 526 N.W.2d 67 (1995), *overruled on other grounds, State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323; *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994).

In determining whether evidence is sufficient to sustain a conviction in a bench trial, an appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, evaluate

explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994); *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994).

In a bench trial of a criminal case, the trial court's findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Hill v. City of Lincoln, ante* p. 88, 541 N.W.2d 655 (1996); *State v. Kunath, supra*; *State v. Masters, supra*.

## IV. ANALYSIS

### 1. STANDING

Before one may challenge a nonconsensual search without a warrant, one must have standing in a legal controversy. *State v. Baltimore*, 242 Neb. 562, 495 N.W.2d 921 (1993); *State v. $15,518 in U.S. Currency*, 239 Neb. 100, 474 N.W.2d 659 (1991). As we recently held in *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995), analyzing standing requires an inquiry into whether the disputed search and seizure has infringed an interest of the defendant in violation of the protection afforded by the Fourth Amendment. The test used to determine if the defendant has an interest protected by the Fourth Amendment is whether the defendant has a legitimate expectation of privacy in the premises. *Id.*

In *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527 (1990), we held that an overnight guest has an expectation of privacy in his host's home, which expectation society is willing to recognize as reasonable, and, therefore, has standing to assert Fourth Amendment violations. See, also, *Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990). However, we have, thus far, declined to extend the holding of *Walker* beyond the situation of the overnight guest. See, *State v. Cody, supra*; *State v. Baltimore, supra*; *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991).

In *State v. Baltimore, supra*, we found no standing for a defendant who was within the searched premises at the time the police entered the home, despite the fact that at the time of the search, he possessed a key to the premises. In finding no

standing, we held that "nothing indicates that Baltimore, even with a key to the house, had a legitimate expectancy of freedom from others' entering [the] house . . . ." *Id.* at 573, 495 N.W.2d at 928.

In *State v. Cody, supra,* while caring for his mother's pets during a long period while she was away, the defendant periodically stayed in one bedroom of his mother's house and entered the shed on the property in which the pet food was stored. We found that Cody did not have a legitimate expectation of privacy in either the shed or the bedroom in which he stayed. Therefore, Cody could not raise a Fourth Amendment challenge.

Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *State v. Dake, supra; State v. Skalberg, supra; State v. Dean, supra.*

We find that the facts of the present case are less persuasive for standing than the facts presented in *Baltimore* and *Cody.* Conklin was an occasional guest at apartment No. 41, possessed no interest in the property, and had no freedom to exclude anyone from the premises. Under the reasoning of *Baltimore* and *Cody,* he does not demonstrate a legitimate expectation of privacy in apartment No. 41. As Conklin had no legitimate expectation of privacy in the apartment, we conclude that the motion to suppress was properly denied.

## 2. VALIDITY OF §§ 20–42 AND 20–192

Conklin claims in his motion to quash that §§ 20–42 and 20–192 of the Omaha Municipal Code are unconstitutionally vague and overbroad, both on their face and as applied to him. However, we do not consider Conklin's facial challenges, because they were not properly raised.

Under Nebraska law, a motion to quash is a proper procedural method for challenging the facial validity of a statute. *State v. Kelley, ante* p. 99, 541 N.W.2d 645 (1996); *State v. Valencia,* 205 Neb. 719, 290 N.W.2d 181 (1980). See, also, Neb. Rev. Stat. § 29–1808 (Reissue 1989).

Conklin filed a motion to quash on June 7, 1994; however, he had previously entered a plea of not guilty on April 11. All

defects that may be excepted to by a motion to quash are taken as waived by a defendant pleading the general issue. *State v. Bocian*, 226 Neb. 613, 413 N.W.2d 893 (1987). See, also, Neb. Rev. Stat. § 29–1812 (Reissue 1989). Furthermore, when Conklin filed his motion to quash, he did not withdraw his plea to the general issue. As long as the plea of not guilty remained upon the record, the motion to quash was not timely filed, because Conklin had already waived the defects alleged in the motion to quash. See, *State v. Bocian, supra*; *State v. Etchison*, 190 Neb. 629, 211 N.W.2d 405 (1973) (holding that because defendant did not request leave to withdraw plea, motion to quash was properly denied). Therefore, Conklin waived his facial challenges by filing his motion to quash after entering his plea, without requesting leave to withdraw the plea.

Challenges to the constitutionality of a statute as applied to the defendant are properly preserved by a plea of not guilty. *State v. Saulsbury*, 243 Neb. 227, 498 N.W.2d 338 (1993). See, also, *State v. Pierson*, 239 Neb. 350, 476 N.W.2d 544 (1991). Therefore, we must determine whether §§ 20–42 and 20–192 of the Omaha Municipal Code are constitutional as applied to Conklin.

(a) Vagueness Challenge

This court has previously held that " '[d]ue process requires that a penal statute supply adequate and fair notice of the conduct prohibited and also supply an explicit legislative standard defining the proscribed conduct, to prevent arbitrary and discriminatory . enforcement at the discretion of law enforcement officials.' " *State v. Schmailzl*, 243 Neb. 734, 736, 502 N.W.2d 463, 465 (1993) (quoting *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988)).

However, in order to have standing to attack a vague statute, one must not have engaged in conduct which is clearly proscribed by the statute. *State v. Groves*, 219 Neb. 382, 363 N.W.2d 507 (1985); *State v. Frey*, 218 Neb. 558, 357 N.W.2d 216 (1984).

Section 20–42 reads as follows: **"Disorderly conduct.** It shall be unlawful for any person purposely or knowingly to cause inconvenience, annoyance or alarm or create the risk

thereof to any person by: (a) Engaging in fighting, threatening or violent conduct; or (b) Using abusive, threatening or other fighting language or gestures."

Conklin's conduct was clearly proscribed by this ordinance. Conklin "purposely or knowingly" caused alarm or created the risk thereof to the officers, Fowler and Rieck, by holding the knife aloft in such manner as could be construed as threatening. When the door to the apartment opened and Fowler and Rieck looked in the door, Conklin was in a threatening enough posture to give them cause to draw their weapons. As the district court judge stated when reviewing this case, "[T]here is no dispute that the officers felt sufficiently threatened to draw their firearms on the defendant, and that defining moment speaks volumes about what it was that transpired on that night." As Conklin's conduct was clearly proscribed by the ordinance, he has no standing to challenge § 20–42 as vague as applied to his conduct.

Section 20–192 provides: "**Carrying concealed weapon.** It shall be unlawful for any person except an authorized law enforcement officer purposely or knowingly to carry a weapon concealed on or about his person."

We have previously considered the constitutionality of § 20–192 in *State v. Pierson, supra*. In *Pierson*, the defendant was convicted of carrying a concealed weapon in violation of § 20–192, and challenged the ordinance as unconstitutionally vague. This court held that while due process of law requires that criminal statutes be clear and definite, it is not necessary for a penal statute to be written so as to be beyond the mere possibility of more than one construction. *Id*. Furthermore, we recognized that the prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. *State v. Pierson, supra; State v. Valencia*, 205 Neb. 719, 290 N.W.2d 181 (1980).

In *Pierson*, where one knife found to be a concealed weapon was a folding knife with a $3\frac{1}{2}$-inch blade, we held that § 20–192 was not unconstitutionally vague in light of the definition of "weapon" found in Omaha Mun. Code, ch. 20, art. VII, § 20–191 (1993). Section 20–191 provides that a weapon includes any instrument "the use of which is intended

or likely to cause death or bodily injury." We held that an ordinary person could determine with reasonable certainty (1) whether the use of a particular instrument as a weapon is likely to cause death or bodily injury or (2) whether the person intended to use the instrument to cause death or bodily injury. Whether the accused knew that using the particular weapon is likely to cause death or bodily injury is a question of fact to be resolved by the trier of fact. *State v. Pierson*, 239 Neb. 350, 476 N.W.2d 544 (1991).

In a bench trial of a criminal case, the trial court's findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Hill v. City of Lincoln, ante* p. 88, 541 N.W.2d 655 (1996); *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994).

The knife found in Conklin's pocket is a folding knife with a blade approximately 3 inches in length. In light of our previous holding in *Pierson* that a knife with a $3\frac{1}{2}$–inch blade was a weapon, we hold that it was not clearly erroneous for the trial judge to conclude that Conklin knew that a knife of this size was likely to cause death or bodily injury if it was used as a weapon. Thus, we conclude that § 20–192 gave Conklin sufficient notice that carrying such a knife concealed in his pocket was proscribed; therefore, as applied to the facts in this case, § 20–192 is not vague.

### (b) Overbreadth of §§ 20–42 and 20–192

What remains to be determined is whether the ordinance is overbroad in its application to Conklin. In passing upon the constitutionality of an ordinance, an appellate court begins with a presumption that the ordinance is valid; consequently, the burden is on the challenger to demonstrate the constitutional defect. *City of Lincoln v. ABC Books, Inc.*, 238 Neb. 378, 470 N.W.2d 760 (1991). In order to succeed in his overbreadth challenge, Conklin must demonstrate that §§ 20–42 and 20–192 impinge on constitutionally protected conduct. We conclude that they do not.

With regard to § 20–42, we determine that the State has a legitimate interest in proscribing fighting, threatening, or

violent conduct, whether in private or in public, and that proscribing such conduct infringes upon no constitutionally protected conduct.

Furthermore, while Conklin was a guest in the apartment, Rieck found a knife concealed in Conklin's left rear pocket and charged him with violating § 20-192. The State has a legitimate interest in proscribing the carrying of concealed weapons in order to protect the safety of citizens and law enforcement officers. We find that carrying a knife in one's pocket while a guest in another's home is not constitutionally protected conduct. Thus, we reject Conklin's overbreadth argument with regard to § 20-192 and leave for another day the question of whether the ordinance would be overbroad if applied to persons in their own homes.

### 3. Sufficiency of Evidence

Conklin alleges that the evidence presented at trial was insufficient as a matter of law to convict him of disorderly conduct or carrying a concealed weapon. The basis of his argument with regard to § 20-42 is that the disorderly conduct ordinance, § 20-42, comes under article III, which is entitled "**OFFENSES AGAINST THE PUBLIC PEACE,**" and Conklin was in a private residence apartment building at the time of the arrest.

Headings, captions, or catchlines supplied in the compilation of statutes do not constitute any part of the law. *In re Estate of Peterson*, 230 Neb. 744, 433 N.W.2d 500 (1988); *Lawson v. Ford Motor Co.*, 225 Neb. 725, 408 N.W.2d 256 (1987). Neb. Rev. Stat. § 49-802(8) (Reissue 1993). Furthermore, as the State argues, maintenance of the public peace does not necessarily require offenses to be committed in public. Public peace, in this sense, is that tranquility enjoyed by the citizen of a community where good order reigns. It represents quiet, orderly behavior between individuals and the government. See *Newby v. Woodbury County District Court*, 259 Iowa 1330, 147 N.W.2d 886 (1967).

Conklin argues that there was insufficient evidence to convict him of carrying a concealed weapon pursuant to § 20-192, because he has proved an affirmative defense under Omaha

Mun. Code, ch. 20, art. VII, § 20–194 (1993), that "he was engaged in a lawful business, calling or employment and the circumstances in which he was placed at the time were such as to justify a prudent person carrying a weapon for his own defense . . . ." The basis for Conklin's claim is his testimony that he had just left work. Ostensibly, he used the knife found on his person to open packages of meat at his place of employment, Skylark Meats.

In determining whether evidence is sufficient to sustain a conviction in a bench trial, an appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994); *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994). In a bench trial of a criminal case, the trial court's findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Hill v. City of Lincoln, ante* p. 88, 541 N.W.2d 655 (1996); *State v. Kunath, supra*; *State v. Masters, supra*. We find that the trial court did not err in determining that an affirmative defense was not available in this case, and we, therefore, affirm its decision.

## V. CONCLUSION

As Conklin did not have a legitimate expectation of privacy in 2211 Howard Street, apartment No. 41, the trial court properly denied his motion to suppress. Additionally, Conklin's motion to quash was not timely filed; therefore, he waived any challenge to the facial constitutionality of the ordinances by filing a plea of not guilty. Furthermore, §§ 20–42 and 20–192 are not unconstitutionally vague and overbroad. Finally, we conclude that there was sufficient evidence with which to convict Conklin, and we, therefore, affirm.

AFFIRMED.

WHITE, C.J., not participating in the decision.