STATE OF NEBRASKA, APPELLEE, V. JACK LARA, APPELLANT.

607 N.W.2d 487

Filed March 10, 2000.   No. S-99-614.

Edouardo Zendejas for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Jack Lara was convicted of assault in the first degree and use of a weapon to commit a felony in relation to the August 2, 1998, shooting of Martin Bernard Logan. Lara appeals, claiming that the district court erred in denying his motion to suppress certain evidence. We moved this case to our docket pursuant to our power to regulate the Nebraska Court of Appeals' caseload and that of this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## BACKGROUND

On August 2, 1998, Logan attended a party at the home of Kathleen Wortman in Grand Island, Nebraska. Estimates of the number in attendance ranged from 20 up to 100 people. Lara, a friend of Kathleen Wortman's son, Mark Wortman, was an overnight guest at the Wortman residence at the time.

During the course of the party, a fight ensued involving Logan, Mark Wortman, and several other people, including Lara. During the fight, Logan was shot three times. The shooter was described as being a Hispanic male, 5 feet 6 inches tall, with buzz-cut, black hair; weighing 150 pounds; and wearing a striped shirt. Logan sustained serious injuries as a result of the shooting.

Police officers initially searched the Wortman residence with the permission of Kathleen Wortman, but did not find the weapon involved in the shooting. Officers then questioned Lara, who matched the description of the shooter. Lara was given his *Miranda* warnings and signed a waiver form indicating that he understood his rights and that he agreed to speak to the police without consulting with or having a lawyer present. During questioning, Lara initially denied any involvement in the shooting, but later indicated that he had shot Logan because Logan had hit Mark Wortman. Lara told the officers that the gun used in the shooting was located in the northwest basement bedroom of the Wortman residence.

Officers then returned to the Wortman residence and spoke with Kathleen Wortman. She stated that Lara was an overnight guest in the home. Officers did not have a search warrant, but obtained permission from Kathleen Wortman to search the entire residence. Officers found a gun inside a zippered "day planner" in the northwest basement bedroom. Ballistics testing determined that shell casings found outside the Wortman residence where the shooting occurred had been fired from the gun retrieved from the Wortmans' basement.

Lara was arrested and charged in an amended information with attempted first degree murder (count I), two counts of use of a deadly weapon to commit a felony (counts II and IV), and assault in the first degree (count III). Lara filed a motion to sup-

press evidence, including the gun found at the Wortman residence.

On December 14, 1998, a hearing was held on the motion to suppress. At the hearing, Lara testified that he was an overnight guest at the Wortman residence on August 2, 1998. Lara stated he stayed in the basement of the Wortman residence. Lara's luggage was kept upstairs in another bedroom when he first arrived, was then moved to the basement room in which he was staying, and was later moved back upstairs. The day planner which contained the gun involved in the shooting was found in another bedroom in the basement, not the room in which Lara was staying. Officer Timothy Meguire also testified at the hearing. He testified that a gun was found in the northwest bedroom in the basement of the Wortman residence inside a zippered day planner. Meguire testified that he had obtained consent from Kathleen Wortman to search the entire residence.

The court denied Lara's motion to suppress the gun, finding that Lara had no standing to object to the search. The court noted that the gun was found in a room other than the one in which Lara was staying and that none of Lara's other belongings were located in that room. The court determined that under these facts, Lara had no reasonable expectation of privacy and, thus, no standing to object to the search. The court also overruled Lara's motion to suppress statements made while in custody, finding that the statements were voluntarily made by Lara after being properly given his *Miranda* warnings.

Pursuant to an agreement between Lara and the State, Lara waived his right to a jury trial in return for the State's dismissal of the attempted first degree murder charge and use of a weapon associated with that charge. The case was submitted to the court on a variety of police reports regarding the shooting, including a photographic lineup "fact sheet," in which Logan identified Lara as the person who shot him. The police reports were admitted into evidence over Lara's objections to certain portions of the reports which contained statements Lara made while in custody and references to the gun which Lara claimed was seized in violation of his Fourth Amendment rights.

Lara was found guilty of first degree assault and use of a weapon to commit a felony. Lara was sentenced to 13 to 16

years' imprisonment on the assault conviction and 2 to 4 years' imprisonment on the use of a weapon conviction, with the sentences to be served consecutively.

## ASSIGNMENTS OF ERROR

Lara claims, rephrased and summarized, that the district court erred in (1) denying his motion to suppress by finding that Lara had no standing to object to the seizure of the gun found at the Wortman residence, where he was an overnight guest, and (2) finding him guilty based on evidence that should have been suppressed.

## STANDARD OF REVIEW

In reviewing a district court's ruling on a motion to suppress evidence obtained through a warrantless search or seizure, an appellate court conducts a de novo review of reasonable suspicion and probable cause determinations, and reviews factual findings for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Bartholomew, ante* p. 174, 602 N.W.2d 510 (1999). A trial court's findings in a criminal case have the effect of a jury verdict, and a conviction in a bench trial will be sustained if the properly admitted trial evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Meers*, 257 Neb. 398, 598 N.W.2d 435 (1999).

## ANALYSIS

Lara claims the trial court erred in denying his motion to suppress, finding that he had no standing to object to the search of the Wortman home. The trial court determined that Lara had no reasonable expectation of privacy in the area from which the gun was seized because the gun was seized from a room other than the one in which Lara was staying.

To determine whether an individual has an interest protected by the Fourth Amendment and Neb. Const. art. I, § 7, one must determine whether an individual has a legitimate or justifiable expectation of privacy in the invaded place. Ordinarily, two inquiries are required. First, the individual must have exhibited an actual (subjective) expectation of privacy, and second, the expectation must be one that society is prepared to recognize

as reasonable. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

The U.S. Supreme Court has held that an individual's status as an overnight guest is enough alone to show that he or she has a legitimate expectation of privacy in the premises which is protected by the Fourth Amendment. *Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990). Likewise, this court has recognized that an overnight guest has an expectation of privacy in his or her host's home, which society is willing to recognize as reasonable, and, therefore, the overnight guest has standing to assert Fourth Amendment violations. *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996); *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995); *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991); *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527 (1990).

In the present case, Lara was an overnight guest in the Wortman home at the time of the search. Lara's status as an overnight guest is enough alone to show that he had a legitimate expectation of privacy "in the premises" which is protected by the Fourth Amendment. *Walker*, 236 Neb. at 160, 459 N.W.2d at 531. The district court found that Lara had no standing because the gun was found in a room other than the one in which he was sleeping. This fact, however, is insufficient to deny Lara standing to challenge the search. An overnight guest has a legitimate expectation of privacy in his or her host's "home" or in the "premises." See, *Olson, supra*; *Conklin, supra*; *Cody, supra*; *Cortis, supra*; *Walker, supra*. Cases discussing an overnight guest's legitimate expectation of privacy do not limit this expectation of privacy to only the room in which the guest actually stayed. *Id.* The record in the present case indicates that Lara slept in a basement bedroom next to the room in which the gun was found but that his belongings had been moved around to various places in the house. While an overnight guest's legitimate expectation of privacy does not extend to areas of the host's home which are off limits to the guest or of which the guest has no knowledge, *U.S. v. Osorio*, 949 F.2d 38 (2d Cir. 1991), there is no evidence that Lara was confined to a restricted area of the residence or that any area of the home was off limits.

█ Lara's status as an overnight guest in the Wortman home gives him standing to contest the search. The district court erred in finding that Lara had no standing. However, this does not end our inquiry. Not all trial errors, even trial errors of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997).

█ In a bench trial of a law action, including a criminal case tried without a jury, erroneous admission of evidence is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's factual findings necessary for the judgment or decision reviewed; therefore, an appellant must show that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence in a case tried without a jury. *State v. Lujano*, 251 Neb. 256, 557 N.W.2d 217 (1996). See, also, *State v. Lomack*, 239 Neb. 368, 476 N.W.2d 237 (1991) (explaining that burden rests on appellant because of "presumption" that trial court, sitting as fact finder, disregards inadmissible evidence). The appellant must show that the trial court made a finding of guilt based exclusively on the erroneously admitted evidence. *State v. Emrich*, 251 Neb. 540, 557 N.W.2d 674 (1997); *Lujano, supra*; *Lomack, supra*. If there is other sufficient evidence to support the finding of guilt, the conviction will not be reversed. *Lujano, supra*.

We conclude that even without the gun or any related ballistics testing, there was overwhelming evidence to convict Lara. Lara was present at the party when the shooting occurred. He matched the description of the shooter. Logan identified Lara in a photographic lineup as the person who shot him. Lara admitted that he committed the shooting. Although Lara objected to the portions of the police reports containing this admission, he has not assigned or argued any error in relation to the admission of this evidence. The properly admitted evidence overwhelmingly supports Lara's conviction, even if the gun evidence would have been suppressed. Lara has not shown that the trial court based its finding of guilt exclusively on the erroneously admitted evidence.

Lara claims he was prejudiced by the incorrect ruling on the motion to suppress because he waived his right to a jury trial after the court overruled his motion to suppress. He claims he waived his right to a jury in order to avoid having the gun displayed to the jury at trial. However, the record indicates that this was not the reason Lara waived his right to a jury. The record establishes that Lara waived his right to a jury trial as part of an agreement whereby the State dismissed counts I and II, and in exchange, trial would be to the court on counts III and IV, based upon police reports. The agreement further required the State, upon conviction, to stand silent at the time of sentencing and to make no objection to a request by Lara for an appeal bond of 10 percent of $50,000. On this record, Lara has not shown that he was prejudiced by the trial court's error regarding the motion to suppress.

In his second assignment of error, Lara claims that without the gun, there was insufficient evidence to convict him. However, as we have previously stated, there was overwhelming evidence to convict Lara, even without the gun. This assignment of error is without merit.

## CONCLUSION

The trial court erred in finding that Lara had no standing to challenge the search of the Wortman residence. However, we determine that on the facts of this case, such error was harmless beyond a reasonable doubt. The conviction is affirmed.

AFFIRMED.