younger son to Iowa in April 2013. This evidence was uncontroverted. Thus, it is apparent from the record that Nebraska was the home state of the children. The record presented on appeal indicates that the current proceeding was the first to establish paternity of the children, and there is no indication of any prior custody order concerning the children.

Under § 43-1238, the district court in the present case had jurisdiction to make an initial custody determination. Nebraska was the home state, and there is no indication that any other court had jurisdiction under the UCCJEA to make an initial custody determination. The initial custody determination of the district court would then supersede any temporary order entered by the Iowa court. See § 43-1241. The district court erred in concluding that it lacked jurisdiction to make an initial custody determination, and we remand for further proceedings.

## V. CONCLUSION

We conclude that Nebraska was the home state of the children under the UCCJEA and that the district court erred in concluding it lacked jurisdiction to make an initial custody determination. We remand for further proceedings.

REMANDED FOR FURTHER PROCEEDINGS.

---

State of Nebraska, appellee, v.
Kenneth W. Clark, appellant.
___ N.W.2d ___

Filed July 8, 2014.    No. A-13-545.

1. **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.
2. **Judgments: Appeal and Error.** When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
3. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence,

pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

4. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

5. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

6. **Effectiveness of Counsel: Records: Trial: Evidence: Appeal and Error.** A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. Rather, the determining factor is whether the record is sufficient to adequately review the question.

7. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

8. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

9. **Words and Phrases.** The word "or," when used properly, is disjunctive.

10. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

11. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

12. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order.

13. **Effectiveness of Counsel: Proof.** To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

14. ____: ____. To show prejudice on a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

15. **Proof: Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.
16. **Right to Counsel: Waiver: Effectiveness of Counsel.** Appointed counsel must remain with an indigent accused unless one of the following conditions is met: (1) The accused knowingly, voluntarily, and intelligently waives the right to counsel and chooses to proceed pro se; (2) appointed counsel is incompetent, in which case new counsel is to be appointed; or (3) the accused chooses to retain private counsel.
17. **Attorneys at Law: Conflict of Interest.** Appointed counsel may be removed because of a potential conflict of interest, and such a conflict could, in effect, render a defendant's counsel incompetent to represent the defendant and warrant appointment of new counsel.
18. **Attorney and Client: Conflict of Interest: Words and Phrases.** The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another or where a lawyer's representation of one client is rendered less effective by reason of his or her representation of another client.
19. **Effectiveness of Counsel: Proof: Appeal and Error.** An appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel when raising an ineffective assistance claim on direct appeal.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Lisa F. Lozano for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

Inbody, Chief Judge, and Moore and Pirtle, Judges.

Moore, Judge.

### INTRODUCTION

Kenneth W. Clark appeals from his conviction and sentence following a jury trial in the district court for Lancaster County of a violation of the Sex Offender Registration Act (SORA). The court sentenced Clark to 90 days in jail with credit for time served. Clark assigns error to the court's failure to give a requested jury instruction, the overruling of his motion for directed verdict, and the sufficiency of the evidence to convict him. He also asserts that the court imposed an excessive sentence and that he was denied effective assistance of counsel. Finding no merit to the assignments of error, we affirm.

## BACKGROUND

In 2008, Clark pled no contest to and was convicted of third degree sexual assault, a Class I misdemeanor. He was sentenced to 360 days in jail. His conviction and sentence were affirmed on appeal. See *State v. Clark*, 278 Neb. 557, 772 N.W.2d 559 (2009). As a result of the conviction, Clark was subject to the registration requirements of SORA. See, Neb. Rev. Stat. § 28-320 (Reissue 2008); Neb. Rev. Stat. § 29-4003 (Cum. Supp. 2012) (SORA applies to persons who, on or after January 1, 1997, plead to or are found guilty of certain listed crimes, including sexual assault). The present appeal arises out of Clark's conviction for failure to follow those registration requirements in 2012.

On October 5, 2012, the State filed an information in the district court, charging Clark with a SORA violation, pursuant to Neb. Rev. Stat. § 29-4011(l) (Cum. Supp. 2012), a Class IV felony.

On November 27, 2012, Clark's attorney filed a motion for competency evaluation. A hearing on the motion was held on November 28. During the course of the hearing, Clark objected to his attorney's motion and explained the nature of his objection to the district court. On November 28, the court ordered that a competency evaluation be conducted. On January 2, 2013, a hearing was held to determine Clark's competency following the evaluation, and an order was entered on January 3 finding that Clark was not competent to stand trial. This order committed Clark to the Lincoln Regional Center for treatment until such time as the disability may be removed. On February 1, the court found Clark competent to stand trial and ordered him to be released from the Lincoln Regional Center.

A jury trial was held on April 1 through 3, 2013. Testimony was presented from the civilian supervisor for the Nebraska State Patrol (NSP) Sex Offender Registry, a Lancaster County Department of Corrections officer, the records system supervisor for the Lancaster County sheriff's office, and a Lincoln Police Department officer. In addition, certain documentary evidence with respect to Clark's SORA registration and subsequent verifications was admitted.

The record shows that Clark completed his original registration under SORA in May 2008. Clark's original registration forms list his mother as another occupant at the same address. Clark completed a verification form in May 2009, showing no changes in his address. In December 2009, Timothy Kennett, a Lincoln Police Department sergeant whose duties include the investigation of SORA violations, contacted Clark as a part of his compliance checks on registered sex offenders. This contact was made in an effort to update registrants' information prior to an upcoming change in SORA verification requirements in January 2010. Kennett assisted Clark at that time in making sure his information was up to date.

Reporting requirements for verification by registrants changed in 2010. As of January 1, 2010, offenders were required to report to a sheriff's office for verification annually, biannually, or quarterly, depending on their registration duration. Offenders convicted of misdemeanors are required to register for 15 years, and as of January 2010, 15-year registrants were required to verify their information annually in their birth month. At the end of October 2009, the NSP sent a mass mailing to all actively registered offenders, advising them of their registration duration and new verification schedule. Clark was sent a letter dated October 26, 2009, via certified mail, informing him about the changes in verification requirements and that, beginning in 2010, as a 15-year registrant, he would have to verify his registration information every 12 months in his birth month, which is March. The October 2009 letter was returned unclaimed to the NSP, even though it was sent to Clark's last known address in the registration database.

On April 8, 2010, Clark was an inmate at a Lancaster County correctional facility. Following an inquiry regarding Clark by the Lincoln Police Department, a county department of corrections officer asked Clark to fill out a change of address form. This was necessary because sex offender registrants who are incarcerated for more than 3 working days are required to notify the sheriff's office of the change in address. The officer explained to Clark that he needed to complete the form which would be sent to the sheriff's office to correctly designate

Clark's address for SORA purposes. The officer testified that Clark appeared to understand what he needed to do and that he completed the form. Clark completed another change of address form with the sheriff's office in May 2010, showing a new address in Lincoln. The form lists his brother as another occupant at the address.

The NSP sent Clark a letter dated January 21, 2011, again informing him of his responsibilities with respect to registration verification and the changes made effective in January 2010. This letter was sent to the address Clark provided in May 2010. The evidence shows that the letter was actually delivered to Clark on January 28, 2011. Clark signed the notification acknowledgment form on January 28.

Clark completed a change of information form providing a new address, dated February 18, 2011, which was received by the sheriff's office and NSP in February. This form shows Clark again residing with his mother at the same address where he resided when he initially registered. The notification acknowledgment form was also returned to the sheriff's office. However, no verification form was completed by Clark in March, the month of his birthday. In April, the NSP referred Clark's name to Kennett because Clark had missed his sex offender verification in March. On April 18, Kennett contacted Clark regarding his failure to register in March. In explaining why he had not registered in March, Clark told Kennett he had gone to the sheriff's office in February and filled out an updated form because he thought he had to register prior to his birthday. Clark also told Kennett that he did not understand that he had to come in each year during the month of March to register. Kennett explained to Clark that he had to come in every year during March to complete his verification and told him to go to the sheriff's office after their conversation. Clark told Kennett that he understood and that he would not miss any more verifications. Clark completed an updated form on April 18. Kennett subsequently advised Clark that the county attorney's office was not going to file any charges with respect to Clark's failure to register in March. Kennett again explained to Clark that he had to come in every year during the month of March to complete

his registration verification. Clark again told Kennett that he understood.

Clark completed an additional updated form in June 2011. At that time, Clark also signed an acknowledgment form, acknowledging that he had read the notification explaining his duty to register and that he understood his obligations under SORA.

Clark again failed to verify and update his information in March 2012, and his name was referred to Kennett by the NSP. On May 10, Kennett and another detective contacted Clark at his registered address. Kennett explained to Clark that they were there because of the sex offender registry and asked him if he had registered in March. Clark told Kennett he thought he had gone with his mother to register a couple of months before. Kennett asked Clark if he thought it had been in March. Clark responded that he thought so, but that maybe he had forgotten. Kennett then called the sheriff's office to doublecheck Clark's verification status. While Kennett was on the telephone with the sheriff's office, Clark told Kennett that he might have forgotten and that he remembered Kennett contacting him the year before on the same issue. After the sheriff's office advised that Clark's last verification was dated in June 2011, Kennett arrested Clark for violating SORA. The NSP received an update of Clark's information from the sheriff's office in May 2012.

After Kennett's testimony, the State rested, and Clark moved for dismissal for failure to prove a prima facie case, which motion was overruled by the district court.

Clark then presented testimony from his mother, Linda Clark Moore. According to Moore, Clark was 29 years old at the time of trial and has lived with her all of his life except for a 6-month period when he lived with his brother. She testified that Clark has a learning disability; has difficulty reading and verbalizing his thoughts; and suffers from schizophrenia, phobias, and paranoia. Moore testified that she reminds Clark of things, takes him to appointments, reads his papers, and helps him with his paperwork. Clark works with Moore's father at a country club in the "pro shop" and in the kitchen.

Moore filled out the information on the notification acknowledgment form signed by Clark on January 28, 2011, and Clark then signed the form. Moore admitted that the verification document states that offenders have to register annually in the month of their birth at the sheriff's office. Moore took Clark to the sheriff's office in February 2011 to complete his registration. Moore testified that if she had known Clark had to register in March, she would have taken him then. She also testified that she did not think it would make a difference to register in February, since it was "almost a few days away from his birthday." Moore took Clark back to the sheriff's office on April 18 after the police visit to register again.

In May 2012, Moore received a telephone call from police about Clark's not registering again and informing her that Clark was in jail. Moore was very upset that she had failed to take Clark to the sheriff's office on time. However, Moore agreed that it was Clark's duty to complete his verifications as required and that her name only appears on Clark's registry papers as a person of interest because he was living with her.

Following Moore's testimony, Clark rested, and the State had no rebuttal evidence. Clark asked the district court for a directed verdict, which motion was denied by the court.

On April 3, 2013, the jury found Clark guilty of a SORA violation. The district court accepted the verdict and ordered a presentence investigation. On June 20, the court entered an order sentencing Clark to a jail term of 90 days and giving him credit for time served. Clark subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Clark asserts, combined, that the district court erred in (1) overruling his proposed jury instruction No. 3, (2) overruling his motion for directed verdict and convicting him based on insufficient evidence, and (3) imposing an excessive sentence. Clark also asserts that he was denied effective assistance of counsel.

## STANDARD OF REVIEW

[1,2] Whether jury instructions given by a trial court are correct is a question of law. *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014).

[3] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

[4,5] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Rieger*, 286 Neb. 788, 839 N.W.2d 282 (2013). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014).

[6,7] A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). Rather, the determining factor is whether the record is sufficient to adequately review the question. *Id*. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*.

## ANALYSIS

*Jury Instruction.*

Clark asserts that the district court erred in overruling his proposed jury instruction No. 3. Clark's proposed instruction would have required the State to prove that Clark was subject to the provisions of SORA; that he was notified of his obligation to report in person to the sheriff's office every 12 months during the month of his birth; that he "knowingly and willfully (or intentionally) failed to report every twelve months in the month of his birth, in person, to the office of the sheriff of the county in which he resides for purposes of accepting verifications"; and that this occurred in Lancaster County between March 1 and 31, 2012.

The actual jury instruction given by the district court required the State to prove the following elements beyond a reasonable doubt in order to convict Clark of a SORA violation:

> 1. That . . . Clark, was a person subject to [SORA], and
> 2. That . . . Clark knew of his verification requirements under the [a]ct, and
> 3. That . . . Clark failed to verify his registration in person, with the Sheriff . . . , and
> 4. That he failed to verify his registration during the month of his birth, to wit: between March 1, 2012 and March 31, 2012, and
> 5. This failure occurred in Lancaster County, Nebraska.

[8] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013).

Neb. Rev. Stat. § 29-4008 (Cum. Supp. 2012) provides, "No person subject to [SORA] shall *knowingly and willfully* furnish any false or misleading information in the registration *or* fail to provide or timely update law enforcement of any of the information required to be provided by the act." (Emphasis supplied.) Clark argues that a failure to provide or timely

update information must be knowing and willful and that his proposed instruction clarified that requirement. The State argues that the phrase "knowingly and willfully" only modifies the phrase "furnish any false or misleading information" and does not apply to the requirement to provide or timely update information.

[9] We agree with the State. The word "or," when used properly, is disjunctive. *State v. Thacker*, 286 Neb. 16, 834 N.W.2d 597 (2013). Section 29-4008 is worded in the disjunctive with an "or" between the two types of violations contained in the section. Thus, the "knowingly and willfully" language applies only to the furnishing of false and misleading information and not to the failure to update information. As such, the district court did not err in failing to give Clark's requested instruction as it was not a correct statement of the law.

Further, Clark cannot show that he was prejudiced by the district court's refusal to give his proposed instruction. The instruction that was actually given required the jury to find that Clark knew of his verification requirements under SORA and that he failed to verify his registration. This assignment of error is without merit.

*Sufficiency of Evidence.*

Clark asserts that the district court erred in overruling his motion for directed verdict and that the evidence was insufficient to convict him. Section 29-4011(1) provides that "[a]ny person required to register under [SORA] who violates the act is guilty of a Class IV felony." Clark was previously convicted of third degree sexual assault and thus subject to SORA requirements for a period of 15 years, and as a 15-year registrant, he was required to report to the sheriff's office in person in his birth month to complete annual verifications. See, Neb. Rev. Stat. § 29-4005 (Cum. Supp. 2012); Neb. Rev. Stat. § 29-4006(4) (Cum. Supp. 2012).

There is undisputed evidence in the record that Clark's birthday is in March and that he did not complete his annual verification in March 2012. His argument in support of this assignment of error again focuses on his lack of a knowing and willful violation of SORA, but we have already determined

that § 29-4008 does not require a "knowing and willful" failure to provide or update information required by SORA. In any event, there is sufficient evidence in the record to show that Clark knew of his obligation to verify his registration in person in the sheriff's office in March each year and that he failed to do so in March 2012. This assignment of error is without merit.

*Excessive Sentence.*

Clark asserts that the district court imposed an excessive sentence. He argues that, given his unique circumstances, including his mental, intellectual, and academic deficiencies, the sentence of 90 days in jail is excessive and should be reduced or a sentence of probation should be imposed.

Clark was convicted of a Class IV felony, which carries a maximum of 5 years in prison and/or a $10,000 fine. See, § 29-4011(1); Neb. Rev. Stat. § 28-105(1) (Reissue 2008). Thus, Clark's sentence of 90 days in jail is well within the statutory guidelines.

[10,11] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Clark was 29 years old at the time of sentencing. He has a 10th grade education and has been identified as "mildly mentally handicapped" with "speech/language" impairment. Clark told the probation officer conducting the presentence investigation that he is diagnosed as having paranoid schizophrenia with a learning disorder. In 1996, he was diagnosed by a mental health professional as having oppositional defiant disorder and obsessive-compulsive personality features. Clark spent time

in the Lincoln Regional Center from August 2005 to March 2006 for purposes of restoration of competency. At that time, his final diagnosis was substance abuse, including alcohol, and delusional disorder, not otherwise specified. He was also diagnosed as having borderline intellectual functioning.

In addition to the sexual assault that led to his SORA obligation, Clark has been convicted of criminal offenses, including possession of marijuana less than an ounce, assault, possession of drug paraphernalia, resisting arrest, carrying a concealed weapon, and disturbing the peace. On the level of service/case management inventory, he was assessed as a high risk to reoffend and scored in the very high or high ranges with respect to criminal history, leisure/recreation, procriminal attitude/orientation, and antisocial pattern.

It is clear that the district court considered the relevant factors in sentencing Clark. The court spoke at length about the factors it considered. The court rejected a sentence of probation, noting Clark's failure to take responsibility for the current crime. The court noted Clark's extensive prior criminal history and his failure to be compliant with past court orders. Nevertheless, the court rejected a prison sentence and imposed a minimal jail sentence in light of Clark's circumstances. We find no abuse of discretion in the sentence imposed upon Clark.

*Ineffective Assistance of Counsel.*

Finally, Clark asserts that he was denied effective assistance of counsel, arguing that his trial counsel violated his right to a speedy trial by filing a motion for competency evaluation and by failing to withdraw as counsel because of a conflict of interest.

[12-15] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order. *State v. Filholm*, 287 Neb. 763, ___ N.W.2d ___ (2014). To

show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Hernandez*, 22 Neb. App. 62, ___ N.W.2d ___ (2014). To show prejudice on a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Filholm, supra*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Robinson*, 287 Neb. 606, 843 N.W.2d 672 (2014).

With respect to the motion for competency evaluation, the record is sufficient to review this claim and reveals that Clark's counsel was not deficient in raising the question about Clark's competency. Following an evaluation of Clark, he was, in fact, found incompetent to stand trial. After Clark spent a short period of time in the Lincoln Regional Center, the district court found him competent to stand trial and he was released from the Lincoln Regional Center. Contrary to Clark's assertions, the motion was not unnecessary. Further, the motion delayed the trial time only briefly. The information in this case was filed on October 5, 2012, and trial began on April 1, 2013, within the 6-month period set forth in Neb. Rev. Stat. § 29-1207 (Cum. Supp. 2012). Clark was not denied his statutory right to a speedy trial, and thus, his counsel was not ineffective in this regard.

Clark's argument with respect to the alleged conflict of interest is somewhat unclear but appears to relate, in part, to his trial counsel's having filed the motion for competency evaluation against Clark's wishes. He also argues that trial counsel should have withdrawn from his representation of Clark because he had been represented by an attorney from the public defender's office in a previous case and that attorney withdrew due to a conflict of interest, after which Clark retained private counsel.

[16-18] Appointed counsel must remain with an indigent accused unless one of the following conditions is met: (1) The accused knowingly, voluntarily, and intelligently waives the right to counsel and chooses to proceed pro se; (2) appointed

counsel is incompetent, in which case new counsel is to be appointed; or (3) the accused chooses to retain private counsel. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). Appointed counsel may be removed because of a potential conflict of interest, and such a conflict could, in effect, render a defendant's counsel incompetent to represent the defendant and warrant appointment of new counsel. *Id*. The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another or where a lawyer's representation of one client is rendered less effective by reason of his or her representation of another client. *Id*. In the case before us, Clark did not waive his right to counsel, ask to proceed pro se, or indicate that he intended to retain private counsel.

As discussed above, Clark's trial counsel was effectively representing Clark when she asked for a competency evaluation and, in fact, may have been ineffective had she failed to do so. Trial counsel's filing of this motion did not amount to a conflict of interest.

[19] With regard to the suggestion that some other conflict of interest existed based upon a previous conflict with the public defender's office, Clark does not provide sufficient allegations to show that a current conflict of interest existed. An appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel when raising an ineffective assistance claim on direct appeal. *State v. Filholm*, 287 Neb. 763, ___ N.W.2d ___ (2014).

This assignment of error is without merit.

## CONCLUSION

The district court did not abuse its discretion in failing to give Clark's requested jury instruction No. 3. The evidence was sufficient to sustain Clark's conviction, and the court did not impose an excessive sentence. Clark did not receive ineffective assistance of trial counsel.

AFFIRMED.