treatment or categorizations that may follow from the workers' compensation scheme will not always result in mathematical niceties and, in some circumstances, may lead to inequality.[51] But this does not make the Act unconstitutional. The Estate has failed to sustain its burden[52] of establishing the unconstitutionality of the Act under the equal protection, due process, special legislation, or right-to-jury provisions of the U.S. and Nebraska Constitutions.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of the Estate's complaint. The Estate must seek compensation from the employer for Teague's death exclusively from the Workers' Compensation Court.

AFFIRMED.

CASSEL, J., not participating.

---

[51] See *Otto v. Hahn, supra* note 35.

[52] See, e.g., *State ex rel. Bruning v. Gale*, 284 Neb. 257, 817 N.W.2d 768 (2012).

---

STATE OF NEBRASKA, APPELLANT, V.
ERIC C. THACKER, APPELLEE.

STATE OF NEBRASKA, APPELLANT, V. GAIL
L. MORGAN-THACKER, APPELLEE.

___ N.W.2d ___

Filed May 31, 2013.    Nos. S-12-895, S-12-896.

1. **Statutes.** Statutory interpretation presents a question of law.
2. **Appeal and Error.** An appellate court reviews questions of law independently of the lower court.
3. **Criminal Law: Statutes: Appeal and Error.** It is a fundamental principle of statutory construction that courts strictly construe penal statutes, and it is not for the courts to supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there.
4. **Criminal Law: Statutes: Legislature: Intent.** A court gives penal statutes a sensible construction, considering the Legislature's objective and the evils and mischiefs it sought to remedy.

5. **Criminal Law: Statutes.** A court will not apply a penal statute to situations or parties not fairly or clearly within its provisions.
6. ____: ____. Ambiguities in a penal statute are resolved in the defendant's favor.
7. **Schools and School Districts: Parent and Child.** Neb. Rev. Stat. § 79-201(2) (Cum. Supp. 2010) does not require parents to enroll their child in a legally recognized school until they obtain the State's recognition of an exempt homeschool.
8. **Words and Phrases.** The word "or," when used properly, is disjunctive.
9. **Schools and School Districts: Time.** Under Neb. Rev. Stat. § 79-201(2) (Cum. Supp. 2010), an exempt school's ability to complete the minimum instruction hours is the only timing requirement imposed upon an exempt school's calendar year.

Appeals from the District Court for Dawson County, James E. Doyle IV, Judge, on appeal thereto from the County Court for Dawson County, Carlton E. Clark, Judge. Exceptions overruled.

Michael R. Johnson, Deputy Dawson County Attorney, for appellant.

Mark R. McKeone, of Mark R. McKeone, P.C., L.L.O., and Michael P. Farris and Peter K. Kamakawiwoole, Jr., of Home School Legal Defense Association, for appellees.

Heavican, C.J., Wright, Connolly, Stephan, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

Eric C. Thacker and Gail L. Morgan-Thacker (collectively the Thackers) sought to homeschool their children but did not obtain state recognition of their homeschool until October 2011. They did not enroll their five children in any legally recognized school before then. In a joint trial, the county court convicted Eric and Gail individually of five misdemeanor counts—one for each child—for violating Nebraska's compulsory education statute.[1] The county court convicted the Thackers of violating the statute from August 17, 2011 (when the public school calendar year began), to October 4 (when

---

[1] See Neb. Rev. Stat. § 79-201 (Cum. Supp. 2010).

the State received notice that the Thackers would homeschool their children). After consolidating the Thackers' appeals, the district court reversed. The State has appealed under Neb. Rev. Stat. § 29-2315.01 (Reissue 2008), asking for a decision to provide precedent under § 79-201 for future cases.

The State contends that § 79-201 required the Thackers to ensure that their children attended a legally recognized school every day of that school's calendar year until their request to operate a homeschool became effective. The Thackers contend that Nebraska's statutes and regulations required them to do only two things: (1) have their children attend their homeschool every day that it was in session; and (2) complete the minimum required hours of instruction by June 30, 2012, the end of the school year.

We conclude that § 79-201 did not criminalize the Thackers' failure to enroll their children in a legally recognized school pending the State's recognition of their homeschool. We overrule the State's exceptions.

## BACKGROUND

In March 2011, the Thackers moved to Farnam, Nebraska, from New Jersey. Farnam is in the Eustis-Farnam Public Schools district. In 2011, the public school calendar year started on August 17. The principal of the public school learned about the Thackers in March. After a couple of weeks, when the family did not enroll their children in school, he contacted the county attorney.

In April 2011, a sheriff's officer contacted Eric about the children's not being in school. Eric told the officer that he and Gail were homeschooling their children but that they had finished the curriculum for their 2010-11 school year before they moved to Farnam. The officer informed Eric that they must file paperwork with the State and contact the school district or that they could be violating the law. Eric then contacted the principal, who told Eric that they must file paperwork with the Department of Education (the Department) over the summer if they intended to homeschool their children. The Thackers did not enroll their children in public school. Around the middle of September, the principal

wrote the county attorney that the children were not enrolled in public school.

Gail testified that after the family moved to Farnam, Eric received a job offer in Kentucky and they believed they would be moving there at the end of September 2011. Instead, Eric received a promotion at his job in North Platte, Nebraska, and the Thackers planned on homeschooling. Based on their religious objections, they applied to the Department for an exemption from state approval and accreditation requirements for schools. Gail said that they sent in the paperwork to the Department about the end of September but that the envelope was returned because she had not addressed it properly; she resent the envelope. Their signatures on the forms were notarized on September 27, 2011.

The Commissioner of Education acknowledged receipt of the Thackers' documents on October 6, 2011. On the same day, the commissioner sent a report to all public school superintendents listing the parents from whom the commissioner had received the required forms for homeschooling by October 4. The report stated that the commissioner recognized the Thackers' homeschool as of October 6. Gail testified that they planned to start homeschooling on November 14. On October 11, the State charged the Thackers with violating § 79-201 from August 17 through October 4.

At trial, the Thackers argued that they did not violate § 79-201 because their children had attended their exempt homeschool each day that it was in session. They argued that the State had not proved they could not complete the minimum hours of instruction required by state law before June 30, 2012 (the end of the school year). Gail testified that they started their homeschool on November 7, 2011, and that they could complete the required hours before June 30, 2012. But the State argued that until an exempt school is in session and conducting classes, the children must be enrolled in some type of legally recognized school, and that the Thackers' children were not.

The county court found that the Thackers could complete the required hours by the end of the school year. But it determined that they were guilty of violating § 79-201 from August 17 to

October 4, 2011. The Thackers appealed to the district court, which consolidated their appeals.

The district court reversed the decisions and remanded the causes with instructions for the county court to vacate the Thackers' convictions and sentences. The court concluded that for the first year of operation, the statutes and regulations required only that the Thackers begin the operation of their homeschool so that they could complete the required minimum hours of instruction by June 30, 2012. The Department's regulations set June 30 as the end of the school year for the Thackers' homeschool. The court concluded that the Thackers were not required to enroll their children in the public schools pending the start of their exempt homeschool. It further concluded that the Thackers' compliance with § 79-201 was not controlled by whether they had enrolled their children in an exempt school by the start date for the public school calendar year. Because the county court had found that the Thackers could complete the required minimum hours of instructions, the district court reversed.

## ASSIGNMENTS OF ERROR

The State assigns, restated, that the district court erred as follows:

(1) determining that § 79-201 does not require parents to ensure that their school-age children attend a state approved or accredited school until the parents obtain an exemption;

(2) determining that Neb. Rev. Stat. § 79-1601(3) (Cum. Supp. 2012) does not establish the "effective" date of a parent's election statement as the date it is received by the Commissioner of Education; and

(3) determining that the evidence admitted at trial was insufficient to support the convictions.

## STANDARD OF REVIEW

[1,2] Statutory interpretation presents a question of law.[2] We review questions of law independently of the lower court.[3]

---

[2] See *State v. Ramirez*, 285 Neb. 203, 825 N.W.2d 801 (2013).

[3] See *State v. Bree*, 285 Neb. 520, 827 N.W.2d 497 (2013).

## ANALYSIS

The State contends that § 79-201 presumes students will be enrolled in and attending a public school until a parent enrolls his or her child in a different school that the State recognizes. It concedes that § 79-201 allows parents to educate their children in other types of legally recognized schools. But it argues that until a parent obtains the State's recognition of a private homeschool, the child must be attending some legally recognized school during the public school calendar year. And it argues that under § 79-1601(3), the State's recognition of a private homeschool is not effective until the Department receives a parent's notarized statement of intent.

The Thackers contend that § 79-201 only required them to have their children attend their exempt homeschool every day that it was in session and to complete the minimum hours of instruction required by law. They argue that Nebraska's statutes do not preclude them from starting a homeschool after the public school calendar year begins or compel them to enroll their children in a public school until their homeschool begins operation.

We agree with the Thackers. We view the State's argument through the prism of statutory construction principles that apply to penal statutes.

[3-6] It is a fundamental principle of statutory construction that we strictly construe penal statutes, and it is not for the courts to supply missing words or sentences to make clear that which is indefinite, or to supply that which is not there.[4] We give penal statutes a sensible construction, considering the Legislature's objective and the evils and mischiefs it sought to remedy.[5] We will not apply a penal statute to situations or parties not fairly or clearly within its provisions.[6] So, ambiguities in a penal statute are resolved in the defendant's favor.[7]

---

[4] See *State v. McCarthy*, 284 Neb. 572, 822 N.W.2d 386 (2012).

[5] See *State v. Fuller*, 279 Neb. 568, 779 N.W.2d 112 (2010).

[6] See *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009).

[7] See *State v. Dinslage*, 280 Neb. 659, 789 N.W.2d 29 (2010).

Under Neb. Rev. Stat. § 79-210 (Reissue 2008), a person violating a compulsory education statute[8] is guilty of a Class III misdemeanor. As stated, the State charged Eric and Gail with five counts each of violating § 79-201. Section 79-201(2), in relevant part, provides the following:

[E]very person residing in a school district within the State of Nebraska who has legal or actual charge or control of any child who is of mandatory attendance age or is enrolled in a public school shall cause such child to enroll in, if such child is not enrolled, and attend regularly a public, private, denominational, or parochial day school which meets the requirements for legal operation prescribed in Chapter 79, or a school which elects pursuant to section 79-1601 not to meet accreditation or approval requirements, *each day that such school is open and in session*, except when excused by school authorities or when illness or severe weather conditions make attendance impossible or impracticable.

(Emphasis supplied.)

Section 79-1601 sets out the requirements for obtaining an exemption from state approval and accreditation requirements for schools. Under § 79-1601(3), an election to operate an exempt school is effective when the Commissioner of Education receives a signed statement from the parents or legal guardians of all attending students that provides the following information: (1) their reason for electing not to educate their child at a state accredited or approved school; and (2) their commitments that an authorized representative of the parents or legal guardians will submit information to prove that, generally, the school will meet the requirements for basic skills instruction in specified subjects.

This filing requirement applies to any private, denominational, or parochial school that "elects not to meet state accreditation or approval requirements."[9] Private, unaccredited

---

[8] See Neb. Rev. Stat. §§ 79-201 to 79-210 (Reissue 2008, Cum. Supp. 2010 & Supp. 2011).

[9] § 79-1601(3).

schools include homeschools.[10] If the parent representative does not provide the required information, or if any other requirements for obtaining exempt status are not met, the Department will notify the school district in which an attending child resides that the child is not attending an exempt school under § 79-201.[11]

The State contends that this filing requirement for exempt schools and other notification statutes support its position that parents must enroll their children in public school until they obtain State recognition of an exempt school (one that is not subject to accreditation or approval requirements). It argues that school districts have the duty to enforce the compulsory education statutes. And it argues that the notice requirements in Nebraska's statutes allow the superintendents of public school districts to track whether a child in their district is or is not attending a legally recognized school.

We agree that school districts have a duty to enforce school attendance requirements and that notice requirements help superintendents track children's school attendance in their districts.[12] For example, each school must provide the public school superintendent with the children's names who are enrolled in their school and the names of any children who enter or withdraw from the school during the school session. This information is required so the superintendent can enforce § 79-201.[13] And, as stated, the Department will notify a school district about any children who are not attending a recognized exempt school.[14]

[7] But under the law as written, we do not agree that a child must be attending a recognized exempt school each day of the public school calendar year. Nor do we read § 79-201(2) as requiring parents to enroll their child in a legally recognized school until they obtain the State's recognition of an exempt

---

[10] See, generally, 92 Neb. Admin. Code, chs. 12 and 13 (2010).

[11] *Id.*, ch. 13, § 006.

[12] See §§ 79-206, 79-208, and 79-209.

[13] See §§ 79-205 and 79-207.

[14] See 92 Neb. Admin. Code, ch. 13, § 006.

homeschool. Instead, § 79-201(2) provides that a child must "attend regularly a public, private, denominational, or parochial day school . . . *or* a school which elects pursuant to section 79-1601 not to meet accreditation or approval requirements, *each day that such school is open and in session*." (Emphasis supplied.)

[8] The word "or," when used properly, is disjunctive.[15] So the requirement in § 79-201(2) that a child attend school regularly "each day that such school is open and in session" refers to alternative school choices. That is, a child's required attendance at "such school" refers to a school subject to state accreditation or approval requirements or an exempt school not subject to such requirements.

And § 79-201(2) does not make the start of the public school calendar year the default start date for other schools. Nor does it provide that a child must attend a legally recognized school each day of the public school year. The State's interpretation could have unintended consequences for private and parochial schools that operate on a different calendar year than their respective public school district. To the extent that § 79-201(2) is ambiguous whether a child must be enrolled and attending a legally recognized school until the State recognizes an exempt private school, we construe that ambiguity against the State.

Furthermore, the Department's regulations do not require parents to ensure that their child attends a legally recognized school each day of the public school year. Neb. Rev. Stat. § 79-318(5)(c) (Cum. Supp. 2010) authorizes the Department to establish the standards and procedures for exempt schools under § 79-1601. The Department's chapter 13 regulations—for exempt schools established because of a parent's religious objections to the State's accreditation requirements—define a "school year" as "the period of instruction between July 1 and the following June 30."[16] But nothing in Nebraska's statutes or

---

[15] *Liddell-Toney v. Department of Health & Human Servs.*, 281 Neb. 532, 797 N.W.2d 28 (2011).

[16] 92 Neb. Admin. Code, ch. 13, § 002.04.

regulations sets a deadline for the filing requirement in the first year of an exempt school's operation.

It is true that § 79-1601(6) clarifies that if a school fails to comply with the exemption procedures, there could be criminal consequences for a child's parent or legal guardian:

> Any school which elects not to meet state accreditation or approval requirements and does not meet the requirements of subsections (2) through (6) of this section shall not be deemed a school for purposes of section 79-201, and the parents or legal guardians of any students attending such school shall be subject to prosecution pursuant to such section or any statutes relating to habitual truancy.

But neither Nebraska's statutes nor the Department's regulations set out a deadline for an exempt school to begin operations. The regulations require only that a notarized statement from an exempt school's parent representative be filed "[t]hirty days prior to the date on which the exempt school is to begin operation, and annually thereafter by July 15 . . . ."[17] So although the regulations set a filing deadline for an exempt school's second year of operation, they conspicuously omit a filing deadline for the first year.

The only timing requirement for an exempt school's calendar year is imposed by the Department's regulations for minimal instruction hours:

> Prior to the date that the exempt school begins operation, and annually thereafter by July 15, the parent representative will submit to the Commissioner or designee the following:
>
> 004.01 A calendar for the school year indicating a minimum instruction of 1,080 hours in secondary schools and 1,032 hours in elementary schools. During the first year of operation, the days of instruction may be prorated based upon the remaining balance of the school year.[18]

---

[17] *Id.*, § 003.02A.

[18] *Id.*, § 004.

[9] Arguably, the regulation's reference to prorating days of instruction could be read to imply that the student has already completed some days of instruction. As stated, § 79-318(5)(c) authorizes the Department to establish the standards and procedures for exempt schools. But we will not interpret the Department's regulations to impose a requirement that carries criminal consequences when that requirement is not clearly imposed under the governing statute. So the district court correctly determined that under § 79-201(2), an exempt school's ability to complete the minimum instruction hours is the only timing requirement imposed upon an exempt school's calendar year.

We recognize that at some point in the school year, an exempt homeschool would begin operations too late. That is, it could not reasonably prorate the required instructional hours in the remaining days if the students had not previously completed some instruction hours in a legally recognized school. But we need not decide when in the school year that point occurs. Here, the county court specifically found that the Thackers could complete the required instructional hours in the school year. Because the State did not show that the Thackers could not meet the only timing requirement imposed on their homeschool's operation, the district court correctly reversed the county court's decisions and remanded the causes with instructions for the county court to vacate the convictions and sentences.

EXCEPTIONS OVERRULED.

McCORMACK, J., participating on briefs.