with the appellate jurisdiction of the Supreme Court, the district court is directed, upon the release of this opinion and prior to the issuance of the mandate, to forthwith consider whether it would be appropriate to grant release of Armstrong on bond under any conditions it deems warranted.

AFFIRMED.

CASSEL, J., not participating.

———————

State of Nebraska, appellee, v.
Joshua J. McIntyre, appellant.
___ N.W.2d ___

Filed May 29, 2015.    No. S-14-595.

1.  **Administrative Law: Statutes: Appeal and Error.** The meaning and interpretation of statutes and regulations are questions of law which an appellate court resolves independently of the lower court's conclusion.
2.  **Drunk Driving: Blood, Breath, and Urine Tests.** The State must establish four foundational elements for the admissibility of a breath test in a driving under the influence prosecution: (1) The testing device was working properly at the time of the testing; (2) the person who administered the test was qualified and held a valid permit; (3) the test was properly conducted under the methods stated by the Department of Health and Human Services; and (4) all other statutes were satisfied.
3.  **Criminal Law: Statutes: Legislature: Intent.** In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.
4.  **Criminal Law: Statutes.** Penal statutes receive a sensible construction, considering the evils and mischiefs sought to be remedied.
5.  ____: ____. A court will not supply missing words or sentences to make clear that which is indefinite in a penal statute, or supply what is not there.
6.  **Administrative Law.** For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.
7.  **Administrative Law: Drunk Driving: Blood, Breath, and Urine Tests.** The driving under the influence statutes and the regulations promulgated by the Department of Health and Human Services do not bar evidence of the result of a chemical breath test with a deficient sample if the State lays sufficient foundation.
8.  **Criminal Law: Indictments and Informations.** Where a statutory crime may be committed by any of several methods, the indictment or information may charge in a single count that it was committed by any or all of the enumerated methods if they are not inconsistent with or repugnant to each other.

9. **Indictments and Informations.** Objections to the form or content of an information should be raised by a motion to quash.

10. **Pleas.** In general, a court cannot entertain a motion to quash if the defendant's not guilty plea still stands.

11. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

12. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Shawn Elliott for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

## SUMMARY

The State charged Joshua J. McIntyre with operating a motor vehicle under the influence of alcohol. The operative information further alleged either that McIntyre did so with a breath alcohol content of at least .15 of 1 gram by weight of alcohol per 210 liters of his breath or that he refused to submit to a chemical test of his breath. Witnesses for the State testified that McIntyre intentionally withheld air from the testing device, resulting in a sample size that the device labeled "Deficient." Nevertheless, the device reported that McIntyre's breath alcohol content was .218. The jury convicted McIntyre of operating a motor vehicle under the influence of alcohol and further found that his breath alcohol content was .15 or greater. On appeal, McIntyre argues that the results of the chemical test are inadmissible because the testing device

registered a "Deficient Sample." We conclude that evidence of a chemical breath test that records a deficient sample is admissible if the State lays sufficient foundation.

## BACKGROUND

### FACTUAL BACKGROUND

On April 10, 2013, McIntyre went to a bar with two coworkers. He arrived at 10:15 or 10:30 p.m. and left at about 2 a.m. on April 11. In less than 4 hours, McIntyre testified that he drank two beers, four or five mixed drinks, and about two shots of some type of liqueur. Although he knew that he was "under the influence of alcohol," McIntyre volunteered to drive his friend's car because his companions seemed even more intoxicated.

Sara Genoways, a Lincoln police officer, was on patrol during the early morning of April 11, 2013. Genoways was driving on Interstate 180 at 2:32 a.m. when she saw a red Mazda traveling northbound. Genoways followed the Mazda and saw it weave between lane lines and vacillate between 50 and 75 miles per hour in a 60-mile-per-hour zone.

Genoways stopped the Mazda and asked the driver, McIntyre, for his personal identification, vehicle registration, and insurance. Genoways said that McIntyre had "difficulty retrieving his license" and "was fumbling with his paperwork." Such "dexterity problems," Genoways testified, indicate impairment. In addition, Genoways noticed that McIntyre smelled strongly of alcohol, his eyes were "watery and bloodshot," his eyelids were "droopy," and he spoke with a "pronounced slur."

McIntyre agreed to perform field sobriety tests. Genoways administered the horizontal gaze nystagmus test, and McIntyre showed all six signs of impairment. Because of bad weather, Genoways did not administer any other standardized test.

Believing that McIntyre was intoxicated, Genoways arrested him and took him to a testing center. She interviewed McIntyre, and he admitted that he was under the influence. At trial, McIntyre testified that he "started to really feel it" at the testing center and was "pretty drunk."

After McIntyre's waiting period ended, Genoways prepared him to take a chemical test of his breath on a DataMaster, a device that uses the infrared absorption method to measure alcohol content. Genoways told McIntyre to "take a deep breath [and] blow long and consistently into the machine" until he was "completely out of air." He began the test, and the device started to make a constant tone, but then began beeping. Genoways explained that the device emits "short little beeps" if "somebody is not blowing" and "make[s] a long steady tone" if "somebody is blowing sufficiently." According to Genoways, McIntyre "was puffing out his cheeks and acting like he was blowing in the machine" without really doing so. Genoways believed that McIntyre understood her instructions and knew that he was not blowing hard enough.

McIntyre eventually exhausted the DataMaster's "two-minute window," and the device "time[d] out." After the test ended, the machine produced a "printout" stating "DEFICIENT SAMPLE, INCOMPLETE TEST." Nevertheless, the printout recorded a breath alcohol content of .218 and stated that the "VALUE PRINTED WAS HIGHEST OBTAINED." The printout includes a graph of the flow of air into the machine and the alcohol content of that air. The Nebraska Department of Health and Human Services' regulations provide a checklist to be completed by the officer administering the chemical test. Because the sample was deficient, Genoways wrote "Refused" in the field for McIntyre's breath alcohol content in the DataMaster checklist.

McIntyre testified that he misunderstood Genoways' instructions. He said that Genoways told him to "blow until I heard a flat line." So, he blew until he "heard the flat line" and then stopped. McIntyre testified that he tried to comply and denied that he was "just puffing [his] cheeks out." But McIntyre admitted that he knew that ".15 is a more offense [sic] than .08."

Todd Kocian was the officer responsible for maintaining the machine into which McIntyre blew. Kocian became a maintenance officer for the Lincoln Police Department's breath testing devices in 2009 and attended a 2-day class on the

DataMaster in 2012. Kocian testified that on March 19 and April 25, 2013, he performed maintenance checks on the device McIntyre used, and that the machine worked correctly on both occasions. Based on the maintenance records, Kocian opined that it was in working order on April 11.

Over McIntyre's objection, Kocian also testified about the accuracy of a test with a deficient sample. Kocian explained that a DataMaster's measurement of blood or breath alcohol content eventually "plateau[s]" once the subject provides "deep lung air" that is "consistent with the blood." The device deems a sample deficient if the measurement of breath alcohol never plateaued. But Kocian stated that a deficient sample could still yield a "scientifically accurate" result. He analogized:

> [I]f we had a large hill and I was going to have somebody measure the distance to the top of the hill, and I gave you some sort of measuring device, [and] I started you up the hill and never got to the top of the hill and stopped at some point, I don't know how tall the hill is, but I know how far you got up that hill.

That is, Kocian testified that .218 was McIntyre's minimum, but not maximum, breath alcohol content.

## PROCEDURAL HISTORY

The State filed an information alleging that McIntyre operated a motor vehicle while under the influence of alcohol or when he had a breath alcohol concentration of .08 or more. The State further alleged that McIntyre had a concentration of .15 or more and that he had two prior convictions for driving under the influence.

Before trial, the State orally moved for leave to amend the information. McIntyre did not object, and the court sustained the State's motion. At the same hearing, the State amended the original information by interlineation. The amended information adds—as an alternative to the allegation that his breath alcohol content was at least .15—an allegation that McIntyre refused to submit to a chemical test. McIntyre told the court that he had a chance to review the amended information.

After accepting McIntyre's not guilty plea to the amended information, the court asked if "there is anything else we need to take up with respect to the Amended Information." McIntyre's attorney said that there was not. McIntyre did not move to quash the amended information.

McIntyre moved in limine to prohibit references "to any read out or result from the formal breath test during which the State claims that [McIntyre] failed to provide sufficient breath sample or refused to submit to a formal breath test." McIntyre argued that such evidence was irrelevant or, if relevant, the court should exclude it under Neb. Evid. R. 403.[1]

At the hearing on McIntyre's motion in limine, Kocian gave testimony similar to his testimony at trial. Kocian stated that .218 was an accurate measurement of "the lowest possible breath alcohol content" that McIntyre could have had at the time of the test.

The court overruled McIntyre's motion in limine the day before trial. The court stated that a breath sample deemed deficient by the testing device could nevertheless yield a reliable measure of alcohol content. The court offered an alternative to Kocian's hill analogy:

> Assuming that [a] thermometer is in good working order, it takes about two minutes under your tongue or under your arm to register a valid temperature. If somebody takes that thermometer out after one minute and that thermometer reads 101, that is reliable evidence of a fever. Even though the person's actual temperature may be higher than 101, it can reliably be concluded that the temperature is not lower than 101.

The court concluded "the test result is sufficiently reliable to be relevant and admissible."

McIntyre's attorney stated that "given the court's ruling on the motion in limine, I think the State should be required to elect as to whether it's .15 or refusal." Although the court viewed the theories as "logically inconsistent," it overruled McIntyre's "oral motion that the State elect between alternative theories."

---

[1] Neb. Rev. Stat. § 27-403 (Reissue 2008).

The jury found McIntyre guilty of driving under the influence of alcohol and also found that he had a breath alcohol content of at least .15.

After an enhancement hearing, the court found that McIntyre had two prior convictions for driving under the influence. Because McIntyre had two prior convictions and the jury found that his breath alcohol content was at least .15, his crime is a Class IIIA felony punishable by up to 5 years' imprisonment.[2]

The court sentenced McIntyre to 365 days' imprisonment and revoked his operator's license for 15 years.

## ASSIGNMENTS OF ERROR

McIntyre assigns, renumbered, that the court erred by (1) not excluding evidence of "the highest [breath alcohol content] value obtained from a deficient breath sample"; (2) not requiring the State to elect between the theory that he had a breath alcohol content of at least .15 and the theory that he refused to submit to a chemical test; and (3) imposing an excessive sentence. McIntyre also assigns that (4) the evidence is insufficient to support his conviction.

## STANDARD OF REVIEW

[1] The meaning and interpretation of statutes and regulations are questions of law which an appellate court resolves independently of the lower court's conclusion.[3]

## ANALYSIS

### Evidence of Chemical Test
### With Deficient Sample

McIntyre argues that the results of a chemical test for which the motorist gives a "deficient" sample are inadmissible. He contends that "[t]he plain language of Title 177 [of the Nebraska Administrative Code] does not permit the numerical results of a deficient breath sample to be made part of the

---

[2] See Neb. Rev. Stat. §§ 28-105 (Cum. Supp. 2014) and 60-6,197.03(6) (Cum. Supp. 2012).

[3] See *Liddell-Toney v. Department of Health & Human Servs.*, 281 Neb. 532, 797 N.W.2d 28 (2011).

official record."[4] Because the result of a test with a deficient sample cannot be part of the official record, McIntyre argues that it cannot be evidence of his breath alcohol content.

Of course, the State sees it differently. It responds that McIntyre's interpretation of the regulations would permit bad faith test takers to "'game the system'": "A person could simply feign compliance with the test by providing a deficient breath sample, making it difficult to prove a refusal, and then any [breath alcohol content] measurement obtained from that sample would also be inadmissible, so [breath alcohol content] could not be proved either."[5]

We begin with an overview of the relevant statutes. Under Neb. Rev. Stat. § 60-6,196 (Reissue 2010), a person commits a crime by operating a motor vehicle (1) while under the influence of alcoholic liquor, (2) with a concentration of .08 of 1 gram or more by weight of alcohol per 100 milliliters of his or her blood, or (3) with a concentration of .08 of 1 gram or more by weight of alcohol per 210 liters of his or her breath.

The penalties for violating § 60-6,196 are described in § 60-6,197.03. Section 60-6,197.03(6) provides:

> If such person has had two prior convictions and, as part of the current violation, had a concentration of fifteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood or fifteen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath or refused to submit to a test as required under section 60-6,197, such person shall be guilty of a Class IIIA felony . . . .

A chemical test of a person's blood, breath, or urine is admissible in a prosecution for driving under the influence if the requirements of Neb. Rev. Stat. § 60-6,201 (Reissue 2010) are met. Section 60-6,201(3) provides:

> To be considered valid, tests of blood, breath, or urine made under section 60-6,197 . . . shall be performed according to methods approved by the Department of

---

[4] Brief for appellant at 15-16.

[5] Brief for appellee at 20.

Health and Human Services and by an individual pos-
sessing a valid permit issued by such department for such
purpose . . . . The department may approve satisfactory
techniques or methods to perform such tests and may
ascertain the qualifications and competence of individ-
uals to perform such tests and issue permits which shall
be subject to termination or revocation at the discretion
of the department.

The Legislature has therefore conferred on the Department of
Health and Human Services the power to adopt methods for
determining when chemical tests are valid.[6]

The regulations adopted by the department appear in title
177 of the Nebraska Administrative Code. The regulations
define "[v]alid test" as one "performed according to methods
approved by the Department by an individual possessing a
valid permit."[7] The regulations, at 177 Neb. Admin. Code,
ch. 1, § 002.01 (2009), address how breath test results are
reported for "MEDICO-LEGAL PURPOSES." At the time of
McIntyre's arrest, this regulation provided:

Breath Test Results. Report of Breath Test Results of a
test for alcohol of breath shall be reported as hundredths
or thousandths of a gram of alcohol per 210 liters of
breath on the checklist. Test results shall not be rounded
upward. For example, an analysis producing a result of
.138 shall be reported as .13 or as .138.

002.01A No digital result shall be reported on the
checklist unless the device has received a sufficient breath
sample and completely executes its prescribed program
and prints a test record card to indicate that the program
has been completed.

002.01B Prescribed Program. When a breath testing
device fails to print a record card or the record card indi-
cates an incomplete or deficient sample, this indicates
that the device has not completed its prescribed program.

---

[6] *Morrissey v. Department of Motor Vehicles*, 264 Neb. 456, 647 N.W.2d
644 (2002), *disapproved in part on other grounds*, *Hahn v. Neth*, 270 Neb.
164, 699 N.W.2d 32 (2005).

[7] 177 Neb. Admin. Code, ch. 1, § 001.26 (2009).

Such deficient sample does not constitute a completed test or sufficient sample of breath and would be considered to be a refusal. Such deficient sample does not constitute a completed test, but is scientifically probative up to the amount indicated by the testing device at the time that the breath testing procedure stopped.

002.01C The completed checklist found in these rules and regulations shall be the official record of breath test results.

002.01D The printing of a test record card indicates that the prescribed program of the evidentiary breath testing device has been completed.

. . . .

002.01E Record Requirements in Performance of Tests. The testing records must show adherence to the approved method, and techniques.

The checklist approved for DataMaster tests is referred to as "Attachment 2."[8]

[2] The State must establish four foundational elements for the admissibility of a breath test in a driving under the influence prosecution: (1) The testing device was working properly at the time of the testing; (2) the person who administered the test was qualified and held a valid permit; (3) the test was properly conducted under the methods stated by the Department of Health and Human Services; and (4) all other statutes were satisfied.[9]

McIntyre contends that the State did not satisfy the third foundational element: compliance with the department's methods as described in the regulations. Acknowledging that other courts have held that tests of deficient samples can be evidence of a motorist's breath alcohol content,[10] McIntyre seeks to

---

[8]  See 177 Neb. Admin. Code, ch. 1, § 008.01C (2009).

[9]  See *State v. Kuhl*, 276 Neb. 497, 755 N.W.2d 389 (2008).

[10]  See, *U.S. v. Brannon*, 146 F.3d 1194 (9th Cir. 1998); *State v. Mazzuca*, 132 Idaho 868, 979 P.2d 1226 (Idaho App. 1999); *State v. DeMarasse*, 85 N.Y.2d 842, 647 N.E.2d 1353 (1995); *State v. Conrad*, 187 W. Va. 658, 421 S.E.2d 41 (1992); *State v. Wilkinson*, 181 W. Va. 126, 381 S.E.2d 241 (1989); *Williams v. District of Columbia*, 558 A.2d 344 (D.C. 1989).

distinguish these cases on the ground that Nebraska's statutes and regulations specifically prohibit such evidence. Therefore, our task is one of interpretation.

[3-6] In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[11] Penal statutes receive a sensible construction, considering the evils and mischiefs sought to be remedied.[12] We will not supply missing words or sentences to make clear that which is indefinite, or supply what is not there.[13] For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.[14]

The regulations promulgated by the Department of Health and Human Services obviously create some tension. Section 002.01 states that the result of a deficient sample is not a completed test, cannot be recorded on the appropriate checklist, and is considered a refusal. But § 002.01B specifically provides that a deficient sample "is scientifically probative up to the amount indicated by the testing device at the time the breath testing procedure stopped." So, the apparently Janus-faced regulation seems to both accept and reject the same thing. And the answer is not obvious. But we conclude that construing the regulations sensibly in light of the mischief sought to be remedied, they permit the State to introduce the results of a test with a deficient sample if the results are otherwise admissible.

It appears that § 002.01 synthesizes two aims. First, motorists with an alcohol content above the statutory thresholds should not be able to avoid criminal liability by withholding a sufficient sample, thereby preventing the device from determining their true breath alcohol content. Nor should a motorist be able to take advantage of giving a deficient sample by offering the

---

[11] *State v. Robbins*, 253 Neb. 146, 570 N.W.2d 185 (1997).

[12] See *State v. Thacker*, 286 Neb. 16, 834 N.W.2d 597 (2013).

[13] See *id*.

[14] See *Utelcom, Inc. v. Egr*, 264 Neb. 1004, 653 N.W.2d 846 (2002).

result as evidence of his or her actual (i.e., maximum) alcohol concentration. Thus, if a motorist manifests an unwillingness to submit to a chemical test by giving a deficient sample, the regulations require the arresting officer to record the result as a refusal. Second, a reliable measure of a motorist's minimum breath alcohol content should not be barred simply because the result would have been even higher if the motorist gave a full sample. If the test of a deficient sample exceeds the statutory alcohol concentration levels and the State satisfies the foundational elements for admissibility, then the State may offer the result as evidence of the motorist's minimum breath alcohol content despite the lack of a full sample.

McIntyre's interpretation also creates some wiggle room for bad faith test takers. An intoxicated motorist might withhold a full sample, thereby preventing the State from introducing the test results even if they exceed the statutory thresholds. But the motorist could still blow hard enough to cause the device to print a test record card, thereby lending credibility to the motorist's defense to a refusal charge. This strategy is obviously not a guaranteed winner, but it might give some motorists an incentive to evade giving a sufficient sample of their breath.

McIntyre directs us to *State v. Baue*,[15] but that case did not involve a deficient sample. There, the defendant sat for a chemical test of his breath and the device "registered both a digital readout of .12 and an error reading."[16] The device did not print a record card. The defendant took a second test, which resulted in a reading of .11 and no error message. Over the defendant's objection, the arresting officer testified about the result of the first test. The jury convicted the defendant of driving under the influence.

We reversed, concluding that the first foundational element for a breath test—the testing device worked properly—was not met as to the first result. The evidence showed that the device generated a printed card in addition to the digital

---

[15] *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000).

[16] *Id.* at 971, 607 N.W.2d at 196.

display when it worked correctly. The checklist set forth in the regulations required the insertion and removal of the test record card, and we declined to assume that the card was a meaningless formality. The arresting officer himself believed that the lack of a test record card showed that the device did not work properly.

Here, the printout stated that the sample was deficient, not that the device encountered an error. Kocian testified that the "DEFICIENT SAMPLE" notation meant that the sample was large enough to measure only McIntyre's "minimum breath alcohol content." Nothing indicates that the device malfunctioned or otherwise worked improperly.

Nor are the series of Kansas cases that McIntyre cites persuasive.[17] Like the Kansas statutes at issue in those cases, § 60-6,196 provides that the State can convict a motorist on proof that the motorist operated a motor vehicle while under the influence of alcohol or with a particular alcohol content in his or her blood, breath, or urine. But Kansas' statutes expressly stated that the results of deficient sample tests were admissible in the first class of cases and not in the second. Nebraska's statutes and the regulations promulgated thereunder do not draw such a distinction.

[7] In conclusion, the driving under the influence statutes and the regulations promulgated by the Department of Health and Human Services do not bar evidence of the result of a chemical breath test with a deficient sample if the State lays sufficient foundation.

## ELECTION

McIntyre argues that "a plain reading of the [driving under the influence] statutes" allowed the State to prosecute him on the theory that his breath alcohol content was at least .15

---

[17] See, *State v. Stevens*, 285 Kan. 307, 172 P.3d 570 (2007), *abrogated on other grounds, State v. Ahrens*, 296 Kan. 151, 290 P.3d 629 (2012); *State v. Herrman*, 33 Kan. App. 2d 46, 99 P.3d 632 (2004); *State v. Maze*, 16 Kan. App. 2d 527, 825 P.2d 1169 (1992). See, also, *State v. Kieley*, 413 N.W.2d 886 (Minn. App. 1987); *State v. Hallfielder*, 375 N.W.2d 571 (Minn. App. 1985); *Godderz v. Commissioner of Public Safety*, 369 N.W.2d 606 (Minn. App. 1985).

or the theory that he refused a chemical test, but not both.[18] He contends that § 60-6,197.03(6) "does not authorize the State to proceed to trial under alternative theories in a single prosecution."[19] Because the theories are "logically inconsistent" as a matter of statutory interpretation, he argues that the State must pick one or the other.[20]

[8] McIntyre asserts that if the State charges a defendant with alternative means of committing the same crime, the alternatives must not be incongruous. He cites the rule that where a statutory crime may be committed by any of several methods, the indictment or information may charge in a single count that it was committed by any or all of the enumerated methods if they are not inconsistent with or repugnant to each other.[21]

[9] But McIntyre failed to preserve this issue for appellate review. Neb. Rev. Stat. § 29-1808 (Reissue 2008) provides: "A motion to quash may be made in all cases when there is a defect apparent upon the face of the record, including in the form of the indictment or in the manner in which the offense is charged." Objections to the form or content of an information should be raised by a motion to quash.[22] McIntyre's argument that the amended information alleged alternate enhancement theories that are inconsistent as a matter of law would be a defect apparent on the face of the record. Whether the theories were inconsistent under the rules of statutory interpretation did not depend on what evidence the State might adduce at trial. McIntyre could have raised the alleged defect in a motion to quash.[23]

---

[18] Brief for appellant at 16.

[19] *Id.* at 33.

[20] *Id.* at 34.

[21] *State v. Novak*, 181 Neb. 90, 147 N.W.2d 156 (1966); *Hoffman v. State*, 164 Neb. 679, 83 N.W.2d 357 (1957).

[22] *State v. Johnson*, 290 Neb. 369, 859 N.W.2d 877 (2015).

[23] See, *State v. Brouillette*, 265 Neb. 214, 655 N.W.2d 876 (2003); *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997); *State v. Novak, supra* note 21; *Sudyka v. State*, 123 Neb. 431, 243 N.W. 276 (1932). See, also, *Winkelmann v. State*, 114 Neb. 1, 205 N.W. 565 (1925).

By failing to move to quash the amended information because it alleged inconsistent theories of committing a single crime, McIntyre waived that objection.[24] Neb. Rev. Stat. § 29-1812 (Reissue 2008) provides: "The accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment or pleading in bar or the general issue." Thus, we have held that a defendant's failure to move to quash an information generally waives any objections to it.[25]

[10] Nor can we treat McIntyre's last-minute oral motion to elect as a motion to quash. A defendant's waiver of defects under § 29-1812 is mandatory.[26] In general, a court cannot entertain a motion to quash if the defendant's not guilty plea still stands.[27] McIntyre did not move for leave to withdraw his plea to the amended information. Because his not guilty plea remained on the record, any motion to quash was untimely.[28]

McIntyre also urges us to treat the amended information as if it joined multiple offenses. He cites *Sheppard v. State*,[29] in which the State charged the defendant with three separate counts of receiving stolen automobiles. Each count related to a different date and a vehicle owned by a different person. The defendant argued that the trial court should have sustained his pretrial "motion to elect."[30] We explained that trial courts had discretion to permit "'joinder in one indictment, in separate counts, of different felonies, at least of the same class or grade, and subject to the same punishment.'"[31] We affirmed because

---

[24] See *Sudyka v. State, supra* note 23.

[25] See, e.g., *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011). But see *State v. Golgert*, 223 Neb. 950, 395 N.W.2d 520 (1986).

[26] *State v. Liston*, 271 Neb. 468, 712 N.W.2d 264 (2006).

[27] See, *id.*; *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996).

[28] See *State v. Conklin, supra* note 27.

[29] *Sheppard v. State*, 104 Neb. 709, 178 N.W. 616 (1920).

[30] *Id.* at 710, 178 N.W. at 617.

[31] *Id.* at 711, 178 N.W. at 617, quoting *Pointer v. United States*, 151 U.S. 396, 14 S. Ct. 410, 38 L. Ed. 208 (1894).

the defendant had not shown that he was so "confounded or prejudiced in his defense as to call for a reversal."[32]

The joinder of offenses—the question addressed in *Sheppard*—is not before us in this case. Certain offenses are single crimes that the State can prove under different theories.[33] Because each alternative theory is not a separate crime, the theories do not require the State to charge the crime as separate alternative counts.[34] Here, the State charged McIntyre with a single count. We have noted that a violation of § 60-6,196 is one offense which can be proved in more than one way.[35] The same reasoning applies to the alternative theories under § 60-6,197.03(6). We note that Neb. Rev. Stat. § 29-2002 (Reissue 2008) now controls the joinder or separation of charges for trial.[36]

Furthermore, McIntyre has not explained how he was prejudiced. He argues:

> [T]he failure of the district court to require the State to elect between inconsistent theories prejudiced [McIntyre] by resulting in erroneous and prejudicial evidentiary rulings as discussed in the first assigned error. [McIntyre] was further prejudiced because he had to somehow structure the theory of his case to defend against conflicting and logically inconsistent evidence.[37]

Neither of these arguments are persuasive. First, we conclude that the result of his breath test was admissible despite the deficient sample. Second, the bare assertion that the court received "logically inconsistent evidence" does not conclusively show prejudice. Evidence that McIntyre gave a deficient sample was relevant to both the .15 and refusal theories. Even if there was some spillover of evidence between the two

---

[32] *Id.* at 711, 178 N.W. at 617.

[33] *State v. Brouillette, supra* note 23.

[34] *Id.*

[35] *State v. Baue, supra* note 15.

[36] *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014).

[37] Brief for appellant at 34.

theories, we conclude that McIntyre was not so prejudiced as to require a new trial.

## Excessive Sentence

McIntyre argues the sentence of 365 days' imprisonment is excessive. He emphasizes that he completed a substance abuse program and that he has a child support obligation of $83 per month, which he implies he will have trouble paying while incarcerated. McIntyre believes that probation was appropriate because "[t]he fact that [he] completed his prior probation sentences established that he would cooperate with probation."[38]

[11] We cannot say that the court abused its discretion by sentencing McIntyre to 365 days' imprisonment. The principles of law governing the review of sentences are so familiar that we need not repeat them here.[39] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[40] The court did not consider McIntyre to be a candidate for probation, because he underwent probation before and, as shown by his most recent conviction, probation did not prompt him to change his behavior. The court further reasoned that probation would depreciate the seriousness of the crime and that there was a "substantial" risk that McIntyre would reoffend. In addition to two prior driving under the influence convictions, McIntyre has convictions for driving under suspension, driving under revocation, and negligent driving.

## Insufficient Evidence

[12] McIntyre argues that the evidence is not sufficient to support his conviction. In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on

---

[38] *Id*. at 39-40.

[39] See *State v. Carngbe*, 288 Neb. 347, 847 N.W.2d 302 (2014).

[40] *State v. Ortega, ante* p. 172, 859 N.W.2d 305 (2015).

the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[41] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[42]

We conclude that the evidence is sufficient. As to § 60-6,196, Genoways testified that she stopped a motor vehicle operated by McIntyre and that McIntyre showed signs of impairment. McIntyre himself testified that he drove "under the influence of alcohol." As to enhancement under § 60-6,197.03(6), the State presented evidence that McIntyre had two prior convictions and that his breath alcohol content was at least .218, well above the .15 threshold. A rational trier of fact could have found the essential elements of McIntyre's crime beyond a reasonable doubt.

## CONCLUSION

Despite some textual friction, we conclude that the driving under the influence statutes and the regulations promulgated by the Department of Health and Human Services do not bar evidence of the result of a chemical breath test with a deficient sample if the State lays sufficient foundation. Furthermore, the district court did not abuse its discretion in sentencing McIntyre and the evidence was sufficient to support his convictions. We do not reach his argument that the amended information alleged two inconsistent methods of committing the same crime.

AFFIRMED.

---

[41] *State v. Hale, ante* p. 70, 858 N.W.2d 543 (2015).

[42] *Id.*